UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOWEY DANNENBERG COHEN, P.C., its capacity as account holder of, and party with interest in, the REZULIN SETTLEMENT FUND <br>       Plaintiff <br> vs. <br><br> JAMES R. DUGAN, II, STEPHEN B. MURRAY d/b/a THE MURRAY LAW FIRM, RAWLINGS AND ASSOCIATES, PLLC, GREG MURPHY, MORAIN & MURPHY, LLC, WALLACE JORDAN RATLIFF & BRANDT, LLC ELWOOD S. SIMON & ASSOCIATES, P.C., KERSHAW, CUTTER & RATINOFF, LLP, BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO, MARK FISCHER, and GEORGE RAWLINGS <br>       Defendants | Case No. 08 Civ. 0461 <br><br> HONORABLE KENNETH M. KARAS <br><br><br> **ECF CASE** |

## DEFENDANTS' JAMES R. DUGAN, II AND STEPHEN B. MURRAY d/b/a THE MURRAY LAW FIRM MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND BILL IN NATURE OF INTERPLEADER

NOW COME defendants, JAMES R. DUGAN, II and STEPHEN B. MURRAY D/B/A THE MURRAY LAW FIRM ("Dugan and Murray"), who respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Complaint and Bill in Nature of Interpleader.

### BACKGROUND

On August 28, 2000, Wendell Gauthier ("Gauthier"), James Dugan ("Dugan"), and Mark Fischer ("Fischer") of Rawlings & Associates ("Rawlings Firm") entered into a joint venture agreement to prosecute claims on behalf of Blue Cross BlueShield of Louisiana ("BCBSLA"), and numerous other clients, against Warner-Lambert (subsequently bought by Pfizer in 2000) ("Pfizer") relating to the drug Rezulin ("BCBSLA Rezulin case"). The joint venture agreement

expressly provided for a 50/50 division of all attorney fees generated in the litigation from BCBSLA and other non-filing clients, between Gauthier/Dugan and the Rawlings firm.

Gauthier and Dugan had entered into a similar joint venture agreement with Fischer and the Rawlings Firm in the Phen-Fen litigation on July 14, 1999. The Phen-Fen litigation was successfully handled by the Gauthier and Rawlings firms, and the firms divided attorneys' fees, arising from BCBSLA's Phen-Fen case and an inventory of other clients, 50/50 in accordance with their joint venture agreement.

The Original Complaint for the BCBSLA Rezulin case was filed in the United States District Court for the District of Louisiana in New Orleans on August 29, 2000 by Gauthier and Dugan. The BCBSLA case was then transferred by Joint Panel on Multidistrict Litigation ("JPMDL") to the In re Rezulin Products Liability Litigation, MDL 1348, before the Honorable Judge Kaplan in the United States District Court for the Southern District of New York. A similar Rezulin case was filed by Richard Cohen and Lowey Dannenberg Cohen, P.C. (f/k/a Lowey, Dannenberg, Bemporad & Selinger, P.C.) ("Lowey Firm") in the United States District Court for the Southern District of New York on behalf of the Eastern States Health and Welfare Fund. The two cases were subsequently consolidated for pre-trial proceedings.

The lawyers and law firms on the consolidated cases, including the defendants, agreed to work together in a joint venture on the Rezulin Litigation, with the Gauthier Firm handling discovery, the Lowey Firm handling law, pleadings and motions, and the Rawlings firm handling client relations and inventory. The parties worked jointly on a consolidated complaint. After Pfizer filed a Motion to Dismiss the consolidated complaint, the parties worked together on an Opposition to the Motion to Dismiss. Judge Kaplan granted the Defendants' Motion to Dismiss.

Wendell H. Gauthier died December 11, 2001.  Dugan thereafter left Mr. Gauthier's former firm.  Upon leaving the Gauthier Firm, Dugan was assigned all right, interest and responsibility for the Rezulin Litigation.  Upon joining The Murray Law Firm, Dugan assigned 50%, interest and responsibility for the Rezulin Litigation to The Murray Law Firm.

The parties jointly worked on the appeal of the Motion to Dismiss to the United States Court of Appeals for the Second Circuit, which was filed in the summer of 2002.  Despite filing the original BCBSLA Rezulin case and diligently working on the case until this point, Dugan was excluded and omitted from the briefing at the Second Circuit by the Rawlings Firm and the Lowey Firm.  Upon learning of this, Dugan met with Fischer at his office in Louisville, Kentucky to discuss the matter.  Fischer's excuse for excluding Dugan from the Second Circuit briefing was that he believed that "Dugan no longer wished to work on the case."  Dugan reaffirmed to Fischer his continued interest in handling the Rezulin Litigation.  Dugan and Fischer then agreed to hire Kenneth Starr, Esq., to handle the appellate work at the Second Circuit in a manner similar to what they had done in their prior Phen-Fen joint venture.  The Second Circuit eventually reversed and remanded the Rezulin matter to the trial court.

After returning to the district court, Pfizer filed Motions for Summary Judgment. Plaintiffs filed Oppositions to the Motions for Summary Judgment.  The Lowey Firm and the Rawlings Firm excluded Gauthier and Dugan from the Opposition to Motion for Summary Judgment, despite repeated requests by Dugan to be involved in the briefing.  Instead, the Lowey Firm and the Rawlings Firm substituted Greg Murphy for Dugan on the briefs, negligently or intentionally to interfere with Dugan's contract with his client, BCBSLA.  Oral Argument was heard on the Motion for Summary Judgment in Judge Kaplan's Court.  Peter St. Philip of the Lowey Firm handled the argument and James Dugan was in attendance.  Dugan filed a Notice of

Supplemental Authority in support of the Motion for Summary Judgment, citing *Local 68 v. Merck*, a favorable decision denying Motion for Summary Judgment in the Vioxx litigation. Judge Kaplan granted defendants' Motion for Summary Judgment.

The Lowey Firm and the Rawlings Firm filed appeals at the United States Court of Appeal for the Second Circuit, again excluding Dugan from the briefing despite his repeated requests to be included. In December of 2006, Oral Argument was heard at the United States Court of Appeal for the Second Circuit on the summary judgment appeals.

In July 2007, the parties reached a tentative settlement of the consolidated BCBSLA Rezulin case. Plaintiff, however, denied that Dugan and Murray had any interest in recovering the legal fees in question–despite the existence of a joint venture.

On July 18, 2007 Dugan and Murray filed suit against the parties that had agreed to work together on the consolidated BCBSLA Rezulin case pursuant to the joint venture in Civil District Court for the Parish of Orleans ("Dugan action")(Exhibit A). The defendants removed the Dugan action to the United States District Court for the Eastern District of Louisiana. Dugan and Murray moved to Remand. Defendants filed an Answer, an Opposition to Motion to Remand, a Motion to Stay, and a Motion to Dismiss. Defendants also moved the Joint Panel on Multi-District Litigation ("JPMDL") to transfer the Dugan action to the Southern District of New York on the grounds that it was related to the In re Rezulin Products Liability Litigation, MDL 1348, before Judge Kaplan. In September, Judge Fallon granted the Motion to Stay, pending the decision of the JPMDL. On December 12, 2007, the JPMDL transferred the Dugan action to Judge Kaplan. On January 16, 2008, Judge Kaplan granted Dugan and Murray's Motion to Remand the Dugan action to Civil District Court for the Parish of Orleans. (Exhibit B).

On the very next day—after the Dugan action had been pending in the Plaintiff's chosen federal forum for six months—Plaintiff rushed to file this Interpleader action pursuant to 28 U.S.C. Section 1335. Only then did Plaintiff feel the need to deposit any funds into the registry of any court.  Only then did Plaintiff seek and obtain a temporary injunction enjoining Dugan and Murray from further prosecuting the Dugan action in state court.  In addition, Plaintiff names other Defendants here that, to Dugan and Murray's knowledge, are not counsel of record, never made an appearance, and were never included on any briefing in the BCBSLA Rezulin case. Moreover, Plaintiff omits from this action the firm of Shipman & Goodwin, LLP, a firm included on the Master Consolidated Complaint, and other briefing, in the BCBSLA Rezulin case. Plaintiff's position is entirely inconsistent with its duty to seek equitable relief with unclean hands.

Suspiciously, Plaintiff filed this case in the White Plains Division of this Court, where Plaintiff maintains its principle place of business, and failed to indicate that this case is a related case to any Rezulin action.  Plaintiff now apparently has reversed its position on whether this matter should be considered a "related case," as it previously argued to Judge Fallon and to the JPMDL.  Dugan and Murray wrote to the courts seeking transfer pursuant to Local Rule 15 to Judge Kaplan on the grounds that he is most familiar with both the Dugan action, and the underlying BCBSLA Rezulin case.  Plaintiff had ample time and opportunity to deposit the funds in dispute into the state court registry where the Dugan action is currently pending.

The first characterization as attorney fees of any amounts from the underlying settlement has come from Plaintiff's Complaint in this Court.  The Rezulin settlement agreement makes no provisions for the awarding of attorneys' fees. (Exhibit C).  Dugan and Murray are reluctant to assert any claim to the funds deposited by Plaintiff into the registry of this Court, absent a

showing by Plaintiff that such funds are actually attorneys' fees, and constitute the entire amount

that is in controversy.  Plaintiff has done neither.

## ARGUMENT

I.    **Plaintiff has not adequately identified the funds in controversy and has not deposited in the Court Registry the entire sum subject to adverse claims, and this failure is fatal to federal jurisdiction.**

In order for a federal court to exercise jurisdiction pursuant to 28 U.S.C. Section 1335, a

plaintiff must establish three prerequisites:  1) that the plaintiff has in its custody or possession

money or property valued at $500 or more; 2) that two or more adverse claimants of diverse

citizenship claim rights to the money or property; and 3) that "the plaintiff has deposited such

money or property or has paid the amount of the loan or other value of such instrument into the

registry of the court, there to abide the judgment of the court, or has given bond payable to the

clerk of the court in such amount and with such surety as the court or judge may deem proper...."

Dugan and Murray respectfully maintain that this Court lacks jurisdiction under Section

1335 because Plaintiff has not deposited the entire amount in controversy with the registry of any

Court.  The third requirement of the interpleader statute is the deposit of funds. The deposit of

such funds is a jurisdictional requirement.  As the Second Circuit has explained:

> As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants. Section 1335 gives the district courts jurisdiction over such actions when a stakeholder has in his possession money or property 'of the value of $500 or more,' if two or more * * * claimants * * * are claiming or may claim to be entitled to such money or property' and if the stakeholder 'has deposited such money * * into the registry of the court.' This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim.

*Federal Ins. Co. v. Tyco Intn'l.*, 422 F.Supp.2d 357 (S.D.N.Y., 2006) (citing *Metal Transp. Corp.*

*v. Pac. Venture S.S. Corp.,* 288 F.2d 363, 365 (2d Cir.1961) (citing cases).  The view that this

requirement is jurisdictional has been consistently adopted in this Circuit. *Id.* (citing *Coopers & Lybrand, L.L.P. v. Michaels,* No. 94-CV-5643, 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995) (explaining that "a jurisdictional prerequisite to statutory interpleader 'is that the stakeholder deposit a bond in the highest amount that the claimants "are claiming or may claim to be entitled"'") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*, 691 F.Supp. 618, 621 (E.D.N.Y.1988)).

The interpleader statute, however, requires more.  In *General Atomic Co. v. Duke Power Co.*, 553 F. 2d 53, 56-57 (10th Cir. 1977), the Tenth Circuit held that because the property at issue was not in the hands of the interpleading plaintiff, "[t]he essential aspect...that the *res* be under the control of the person bringing the lawsuit, so as to be deliverable to the registry of the court" has not been met.  In this case, Plaintiff has not met this requirement because there is ambiguity as to the exact amount in question. As a result, Plaintiff has not made the exact amount in controversy 'identifiable.' Plaintiff has admitted that it has already distributed the remainder of the settlement funds in an undisclosed manner (Complaint and Bill in Nature of Interpleader at ¶ 3), and Plaintiff has not deposited the entire amount in controversy prior to distributing the settlement funds.

Plaintiff purports to identify the sum of $4,555,657.02 as the entire sum in controversy. However, Plaintiff provides no accounting whatsoever in determining that this portion of the settlement proceeds is indeed the disputed attorney fees, nor does it provide any accounting or explanation of why this is the entire amount at issue.  The underlying settlement agreement was for $22 million to be paid by September 30, 2007.  The settlement agreement makes no provision for attorney fees, and does not create any common fund called "the Rezulin Settlement Fund." (Exhibit C at Art. III, ¶1).  Plaintiff so names the fund in order to create the misleading

impression that it is a fund set up for common benefit attorney work, when it is not. In fact, the last paragraph of the agreement specifically denies that any of the settlement funds are apportioned as attorney fees (Exhibit C ¶29). To clarify this, Dugan sent a letter to Pfizer's counsel on January 18, 2008; but to date has not received any response. (Exhibit D). Any and all attorney fees arising out of this settlement are pursuant to the *individual* contingency fee attorney-client contracts that the settling claimants have with their counsel. The claims asserted in the Dugan action are purely *in personam* claims as a result of the joint venture to split fees 50/50 for all of Rezulin claimants. Significantly, these claims are not *in rem* claims against a common fund or *res.* Contingency fee contracts typically range from 25% to 45% in cases such as this, which puts the entire amount of attorneys' fees at dispute at an undetermined amount, but approximately between $5.5 million and $8.8 million—far more than the plaintiff has deposited into the registry of this Court.

Plaintiff has never made any showing to Dugan and Murray, or the Court, of how any of the Rezulin settlement proceeds were distributed to any clients or law firms, including BCBSLA. As co-counsel for BCBSLA, and members of the bar, Dugan and Murray have an ethical obligation to confirm that any attorneys' fees paid are properly earned, determined and accounted for; Plaintiff herein also has such duties. Given that Plaintiff has never made an accounting for the settlement proceeds, it is entirely unclear to Dugan and Murray what the proceeds purportedly deposited into the registry of this Court actually constitute. No attorney can ethically claim an interest in funds that are properly due to a client, and Dugan and Murray should not be compelled to assert a claim against a sum of funds that part or all of which may be due to a client. Specifically, it is unclear if the amount deposited with the court solely derives from the $5 million "Appeal Deposit" payable to the two litigating plaintiffs to settle the pending

appeal.  It appears to Dugan and Murray that the amount deposited derives only from the $5 million "Appeal Deposit," less approximately $250,000 to each litigating plaintiff in the BCBSLA Rezulin case.  If so, then Dugan and Murray, as co-counsel for BCBSLA, have duty to determine how an attorneys' fee that is nearly ten times greater than the client's portion of the settlement can be justified.  It is also unclear whether the disclosure requirements of the Aggregate Settlement Rule were met, since the settlement was for multiple claimants and was not subject to approval by any court.  It further appears that the attorneys' fees earned from the remaining 64 claimants have not been put into the registry of the Court.

In *North American Marketing Corp. v. K. Gronbach & Assoc., Inc.*, 221 F.R.D. 296, (D.Conn., 2002) the court noted that the plaintiff's alleged stake was in funds that it earmarked through its own internal calculations.  That stake was not defined by express terms but rather was quantified by plaintiff's unsupported declaration.  The court held that the existence of a single, identifiable fund is a fundamental requirement to any interpleader action.  See *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967); *Wausau Ins. Companies v. Gifford*, 954 F.2d 1098, 1100 (5th Cir.1992); *Grossman v. Mushlin*, 493 F.Supp. 330, 333 (S.D.N.Y.1980)("fact that damages ... may be measured, at least in part, by reference to the operation of the pension plan and to the payments made ... from the pension plan funds does not mean that a common fund exists with respect to the two claims").  The court then held that even if the funds designated by plaintiff constitute a single fund, the absence of an undisputed definition as to how the amount of the fund was determined precluded a finding that the funds were "identifiable." *Id*.

Because Plaintiff is in the sole position to make such a determination, but has failed to disclose to Dugan and Murray, or to the Court, how it determined the amount of funds in dispute,

Plaintiff has not properly plead its claim for Interpleader, has not made the disputed funds "identifiable," and comes with unclean hands in seeking equitable relief (See Argument IV, *infra*.).  As a result of Plaintiff's failure to meet the third threshold requirement, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's interpleader action.

Finally, the second prerequisite to an interpleader action is two or more claimants with adverse claims. See *North American Marketing Corp. v. K. Gronbach & Assoc., Inc., supra,* (citing *General Acc. Group v. Gagliardi*, 593 F.Supp. 1080, 1087 (D.Conn. 1984)).  In order to establish adversity, plaintiff must show a risk of double payment on a single liability or claims in excess of the movant's liability limits. *Id.* (citing *Interfirst Bank Dallas, N.A. v. Purolator Courier Corp.*, 608 F.Supp. 351, 353 (D.C.Tex.1985)).  Adversity is not demonstrated when the stakeholder may be liable to all claimants. *Id.* (citing *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995)). "[T]he protection against 'double or multiple liability' ... is protection only against double or multiple liability that is unjustifiable because the plaintiff has but a single obligation." and "[**P]laintiff must establish that it is not independently liable to the claimants.**"  *Id.* (emphasis added). That is certainly not the case here, where Plaintiff is being sued *in personam* for a breach of contract, and the second prerequisite for an interpleader action cannot be satisfied by Plaintiff.

## II.    Plaintiff's suit is duplicative and should be dismissed pursuant to the 'first to file' rule.

The first-to-file rule is a rule of federal comity that permits district courts to decline jurisdiction if a complaint involving the same issues and parties has been filed previously in another district. See *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  Under the first-to-file rule, the entire action should be decided by the court in which the action was first filed. *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). "The 'first to file' rule

is well established in the Second Circuit: where two competing lawsuits have been filed in different jurisdictions, the first action filed is given priority and the second action may be suspended in the interests of judicial economy." *Shaw Family Archives, Ltd. v. Cmg Worldwide, Inc.*, 434 F.Supp.2d 203 (S.D.N.Y. 2006) (citing *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).  The first-to-file rule places a strong presumption in favor of the first-filed suit.  *Id.*  The Second Circuit has found that, in some cases, "the balance of convenience . . . or . . . special circumstances" warrant deviation from the first-to-file rule.  Such circumstances include forum-shopping on the part of the plaintiff in the first action or the so-called "customer rule" (permitting suits against direct patent infringers to continue despite the existence of earlier suits against the infringer's customers). *Id.* Like in *Shaw*, no such special circumstances exist here: it is not forum-shopping for Dugan and Murray to have availed themselves of their home state, and there are no facts that would invoke the "customer rule".

Dugan and Murray filed the Dugan action in Louisiana state court on July 18, 2007, claiming among other things, breach of a joint venture agreement and a concursus proceeding. Under Louisiana law, a concursus proceeding pursuant to LA. C.C.P. ART. 4651 *et seq*. is similar to Federal Interpleader, and injunctive relief is available to the parties to prevent litigation in multiple fora[1].  Plaintiff has known since at least July 18, 2007 that the amounts determined to be attorneys' fees from the settlement were in dispute.  According to the settlement agreement, Plaintiff has been in possession of $5 million of the settlement funds since at least August 31, 2007, and in possession of the remaining $17 million since on or about September 30, 2007. Plaintiff should deposit the amounts in controversy into the registry of the court in the Dugan action.  Contrary to Plaintiff's unsupported assertions concerning personal jurisdiction, Plaintiff

---

[1] LA. C.C.P. ART. 4660 provides for injunctive relief in a concursus proceeding:  "The court may grant the plaintiff in a concursus proceeding injunctive relief prohibiting the defendants from instituting or prosecuting in any court of this state or of the United States any other action or proceeding on the claim involved in the concursus proceeding."

and the other defendants in the Dugan action are subject to personal jurisdiction of Civil District Court for the Parish of Orleans because they are business entities and/or employees thereof that do business in Orleans Parish, namely practicing law[2].  Likewise, the remaining Defendants herein, who are not presently parties in the Dugan action, are all subject to the personal jurisdiction of that court because they are all business entities and/or employees thereof that do business in Orleans Parish and can be joined in the Dugan action[3].  Dugan and Murray were unaware of any potential claims by these Defendants to the amounts in controversy until receipt of Plaintiff's Complaint and Bill in Nature of Interpleader.  Dugan and Murray doubt that these defendants are proper parties to that dispute which concerns a joint venture to split attorneys' fees among plaintiffs and defendants therein.  These Defendants have not filed any other suit.

Defendants therein (including Plaintiff herein and five Defendants herein), filed an Answer to the Dugan action while it was before the United States District Court for the Eastern District of Louisiana, subject to the Federal Rules of Civil Procedure, which did not make any

---

[2] The Court's PACER system for the U.S.D.C. for the Eastern District of Louisiana shows that Attorneys for the Lowey Dannenberg Cohen, P.C. firm have actively represented clients in the U.S.D.C. for the Eastern District of Louisiana, located in New Orleans, Orleans Parish Louisiana, since at least 1990, including but not limited to the following cases:  2:90-cv-04719, 2:90-cv-03133, 2:91-cv-00696, 2:92-cv-01030.

[3] The Court's PACER system for the U.S.D.C. for the Eastern District of Louisiana shows that:
Attorneys for the Wallace Jordan Ratliff & Brandt, LLC, firm have actively represented clients in the U.S.D.C. for the Eastern District of Louisiana, located in New Orleans, Orleans Parish Louisiana, since at least 2005, including but not limited to the following cases: 2:05-cv-03115. Attorneys for the Elwood S. Simon & Associates, P.C. firm have actively represented clients in the U.S.D.C. for the Eastern District of Louisiana, located in New Orleans, Orleans Parish Louisiana, since at least 1990, including but not limited to the following cases: 2:90-cv-03133, 2:90-cv-04719, 2:90-cv-04721, 2:90-cv-04726, 2:90-cv-04727, 2:91-cv-00964, 2:91-cv-01425. Attorneys for the Kershaw, Cutter & Ratinoff LLP firm have actively represented clients in the U.S.D.C. for the Eastern District of Louisiana, located in New Orleans, Orleans Parish Louisiana, since at least 2005, including but not limited to the following cases: 2:05-cv-01530, 2:06-cv-02630, 2:06-cv-02631, 2:06-cv-02632, 2:06-cv-02633, 2:06-cv-02634, 2:06-cv-02636, 2:06-cv-02638, 2:06-cv-02639, 2:06-cv-06733, 2:06-cv-06734, 2:06-cv-06735, 2:06-cv-06736, 2:06-cv-06737, 2:06-cv-06738, 2:06-cv-06739, 2:06-cv-06740, 2:06-cv-06741, 2:06-cv-06742, 2:06-cv-06743, 2:06-cv-06744, 2:06-cv-06745, 2:06-cv-06746, 2:06-cv-06747, 2:06-cv-06748, 2:06-cv-11003, 2:06-cv-11004, 2:06-cv-11044, 2:06-cv-11277, 2:06-cv-11278, 2:06-cv-11279, 2:06-cv-11280, 2:06-cv-11281, 2:06-cv-11282, 2:06-cv-11283, 2:06-cv-11284, 2:06-cv-11286, 2:07-cv-00346, 2:07-cv-00347, 2:07-cv-00348, 2:07-cv-00349, 2:07-cv-00350, 2:07-cv-00351, 2:07-cv-00352, 2:07-cv-00353, 2:07-cv-00354, 2:07-cv-00355, 2:07-cv-00356, 2:07-cv-00357, 2:07-cv-00358, 2:07-cv-00359, 2:07-cv-00360. Attorneys for the Berman DeValerio Pease Tabacco Burt & Pucillo, firm have actively represented clients in the U.S.D.C. for the Eastern District of Louisiana, located in New Orleans, Orleans Parish Louisiana, since at least 2004, including but not limited to the following cases: 2:04-cv-01685, 2:04-cv-02077, 2:05-cv-02165, 2:05-cv-02467.

counterclaims. Counterclaims are either compulsory, if they arise from the same transaction or occurrence as the underlying dispute, Fed. R. Civ. P. 13(a), or permissive, if they are transactionally unrelated to the underlying dispute, Fed. R. Civ. P. 13(b). The compulsory counterclaim rule requires a party to plead any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). It is well settled that a failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim. See, *e.g.*, *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873 (5 Cir. (La.), 1998). Furthermore, Rule 13(a), requiring certain claims to be pleaded as compulsory counterclaims, does not authorize a federal court to enjoin proceedings in state court on a claim that should have been asserted as a compulsory counterclaim under the rule. See Wright & Miller 17A FPP § 4225 (citing *Reines Distributors, Inc. v. Admiral Corp.*, 182 F.Supp. 226 (D.C.N.Y.1960)). Here, Plaintiff's claim as a stakeholder in the funds at issue is barred, and the Complaint and Bill in Nature of Interpleader should be dismissed, because the nature of this claim was a compulsory counterclaim in the Dugan action, and Plaintiff's failure to plead it bars it from bringing it as a later independent action in federal court. Fortunately, the La. C.C.P. is more permissive than Fed. R. Civ. P. 13(a), and such 'incidental demands' can still be asserted against all parties in the Dugan action, and additional parties may still be joined in that action. Plaintiff's herein have a duty under the Louisiana Rules of Civil Procedure to bring in any third-party defendant into the Dugan action, such as other Defendants named in this case[4].

---

[4] La. C.C.P. Art. 1031. Incidental demands allowed, provides:
A. A demand incidental to the principal demand may be instituted against an adverse party, a co-party, or against a third person.

A court also may depart from the first-to-file rule because of the balance of convenience among the parties. The consideration of balance of convenience in the first-filed context is similar to that in motions to transfer, and the same factors are applied. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 560 (S.D.N.Y. 2000). Here, the Balance of Convenience favors Louisiana, and does not favor New York:

In analyzing the balance of convenience, the Court considers the factors applicable to a motion for a change of venue pursuant to 28 U.S.C. § 1404(a). See *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486 (S.D.N.Y., 1995) (citing *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y.1994)). These factors include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* None of these factors favor New York.

---

B. Incidental demands are reconvention, cross-claims, intervention, and the demand against third parties.La. C.C.P. Art. 1033 allows for delayed filing of incidental demand [counterclaims]:

"An incidental demand may be filed without leave of court at any time up to and including the time the answer to the principal demand is filed.An incidental demand may be filed thereafter, with leave of court, if it will not retard the progress of the principal action, or if permitted by Articles 1066 or 1092."

La. C.C.P. Art. 1111 Defendant may bring in third person, states: "The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand.

In such cases the plaintiff in the principal action may assert any demand against the third party defendant arising out of or connected with the principal demand. The third party defendant thereupon shall plead his objections and defenses in the manner prescribed in Articles 921 through 969, 1003 through 1006, and 1035. He may reconvene against the plaintiff in the principal action or the third party plaintiff, on any demand arising out of or connected with the principal demand, in the manner prescribed in Articles 1061 through 1066.

La. C.C.P..Art. 1113. Effect of failure to bring in third party further provides: A defendant who does not bring in as a third party defendant a person who is liable to him for all or part of the principal demand does not on that account lose his right or cause of action against such person, unless the latter proves that he had means of defeating the action which were not used, because the defendant either failed to bring him in as a third party defendant, or neglected to apprise him that the suit had been brought. The same rule obtains with respect to a defendant in reconvention who fails to bring in as a third party defendant a person who is liable to him for all or part of the reconventional demand.

First, the convenience of witnesses favors Louisiana because most of the witnesses are the parties themselves. Five out of the 11 parties are located in Louisiana. Only one party is located in New York. The other parties have their principle places of business in, one each, Michigan, Alabama, California, and Kentucky; however, all regularly conduct business in New Orleans, Louisiana. In addition, the main plaintiff in the underlying case, BCBSLA, who was involved with all parties in this matter, is located in Louisiana.

Second, the location of the relevant documents and the relative ease of access to sources of proof favors Louisiana for the same reasons as the first factor, and because the joint venture agreement was confected in Louisiana. The fact that the underlying case was litigated in New York is less important because most of the actual attorney work was performed at the parties' business locations, and the facts, documents, and witnesses concerning the joint venture are primarily located in Louisiana.

Third, the convenience of the parties favors Louisiana for the same reasons as set forth for the first factor. In addition, Louisiana is more centrally located than New York, particularly for the California party.

Fourth, the locus of the operative facts strongly favors Louisiana because the root of the contention stems from the joint venture agreement that was confected in Louisiana, among two Louisiana parties and the Kentucky party, to which the other parties joined at a later date. Plaintiff denies the existence of this joint venture agreement. Furthermore, the prior joint venture agreement upon which that joint venture was based, for the Phen-Fen litigation, was confected in Louisiana among those same parties.

Fifth, the availability of process to compel attendance of unwilling witnesses does not favor either court. Both New York and Louisiana have personal jurisdiction over all the parties, and both have effective procedures for compelling attendance of witnesses.

Sixth, the relative means of the parties does not favor either court.

Seventh, both court's familiarity with the governing law does not favor either court, both are equally very familiar with the governing law.

Eighth, the weight accorded plaintiff's choice of forum is very strongly in favor of Louisiana. Dugan and Murray instituted the Dugan action more than six months ago Louisiana state court. Every effort by Plaintiff to date has been an attempt to move the forum away from Dugan and Murray's choice of forum. This Court has already ruled on the issue of jurisdiction by remanding the Dugan case to Louisiana. In the interim, Plainitff has made no effort to deposit any disputed funds into the registry of any court, and has mainly instituted this Interpleader action as an effort to forum shop this case to its home jurisdiction.

Finally, trial efficiency favors Louisiana because the time to docket a trial date is generally shorter, approximately six to nine months, in state court as compared to Federal Court. In sum, the overall interest of justice, therefore overwhelmingly favors Louisiana.

### III.    The Anti-Injuction Act should preclude this Court from enjoining the Dugan action, a case which it has just remanded.

Under the Anti-Injunction Act, "a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283. The second exception to 28 U.S.C.A. § 2283 allows a federal court to enjoin state proceedings "where necessary in aid of its jurisdiction." However, in a case with similar procedural history, where the district court had remanded a case to state court and thus lacked jurisdiction, it could

not possibly issue injunction against state proceedings "in aid of its jurisdiction." *Federal Deposit Ins. Corp. v. Santiago Plaza*, 598 F.2d 634 (1st Cir. 1979). Similarly, the Anti-Injunction Act should prevent this court from enjoining a case that it has just remanded.

### IV. Plaintiff Is Barred From The Equitable Remedy Of Interpleader Because It Is Itself Responsible For This Situation, And Does Not Come Into Court With Clean Hands

It is well-established that the remedy of interpleader is equitable in nature and is governed by equitable principles. See *American-Hawaiian Steamship Co. v. Bowring & Co.*, 150 F.Supp. 449 (S.D.N.Y., 1957) (citing *State of Texas v. State of Florida*, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817, *Holcomb v. Aetna Life Insurance Co.,* 255 F.2d 577 *(*10 Cir. 1958)*,* cert. denied *sub nom.*, 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853, reh'g denied 350 U.S. 1016, 76 S.Ct. 657, 100 L.Ed. 875; 2 Baron & Holtzoff, and Federal Practice and Procedure, p. 128 (2nd Ed.)). The Federal Interpleader Act did not change the equitable nature of interpleader. It merely extended the jurisdiction of the Federal Courts to cover the circumstances which it describes. *Danville Building Ass'n of Danville, Ill. v. Gates*, 66 F.Supp. 706 (D.C.E.D.Ill 1946); *cf. Austin v. Texas-Ohio Gas Co.,* 218 F.2d 739 (5 Cir. 1955).

Thus, the equitable doctrines that one seeking equitable relief must do equity and must come into court with clean hands apply in addition to the jurisdictional requirements of the statute. See *Austin v. Texas-Ohio Gas Co.*, *supra*, at p. 745; *Standard Surety & Casualty Co. of New York v. Baker*, 105 F.2d 578 (8 Cir. 1939); *Mallers v. Equitable Life Assurance Society*, 87 F.2d 233 (7 Cir. 1937), cert. denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343; *United States v. Sentinel Fire Ins. Co.*, 178 F.2d 217 (5 Cir. 1950).

Here, plaintiff does not have clean hands in this matter because it 1) has refused to provide any accounting of how it arrived at the sum it did deposit into registry of this Court, or

identify those entitled to those funds, 2) has not deposited with the Court the full amount that is in dispute, 3) is attempting to limit its civil liability in the Dugan action, and 4) never sought to deposit the funds in controversy with any other court, despite ample opportunity to do so, 5) has itself filed the only duplicative litigation only after this court had remanded the Dugan action

Additionally, even if the Plaintiff had successfully deposited full amount in controversy into the Court's registry, the Court should still dismiss this interpleader action.  The "typical plaintiff in an interpleader is an innocent stakeholder who is subject to competing claims.  It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader." *Farmers Irrigating Ditch & Reservoir Co. V. Kane*, 845 F. 2d 229 (10 Cir. 1988).  In this case, Plaintiff is not merely a disinterested stakeholder praying the Court to resolve a dispute between adverse parties.[5]  Instead, Plaintiff is being sued in a breach-of-joint-venture proceeding in Civil District Court for the Parish of Orleans.  Thus, the dispute implicates the duties flowing from the joint venture agreement among those parties.  The Court should not allow Plaintiff to use an interpleader action to invoke the equitable jurisdiction of this Court in order to escape adjudication of its contractual duties, and possible liability, in the state court action. See *Network Solution, Inc. v Clue Computing, Inc.,* et al., 946 F.Supp. 858 (D.Colo. 1996).

Plaintiff's instigation of this interpleader case another attempt to forum shop this controversy after this Court has already remanded—and an effort to improperly limit its liability in—the Dugan action.

---

[5] While a complaint "in the nature of interpleader," technically permits an interested plaintiff to invoke section 28 U.S.C. 1335, *see General Am. Life Ins. Co. v. Floom*, 96 F.Supp. 488 (W.D. Pa. 1951), the interest of the plaintiff in the funds in question should nonetheless be considered by the court sitting in equity.

In light of all the circumstances here, Plaintiff's Interpleader is very similar to *United Artists Corporation v. Fields Productions, Inc.*, 363 F.Supp. 903 (D.C.N.Y. 1973), a case in which this Court granted a defendant's motion to dismiss a federal interpleader action because of ambiguities surrounding the amount of the funds in controversy, lack of adversity among most defendants, and the long pendency of a state court action against the plaintiff by the only truly adverse claimants.   Here, Plaintiff has failed to make a determination of the full amount in controversy, has not deposited into the registry of the court the full amount in controversy, has itself instigated the only competing action in the same court that remanded the state court action it now asks this court to enjoin—a case that has been pending for six months, and has sought relief in equity with unclean hands.

## **CONCLUSION**

For the foregoing reasons, the Complaint and Bill in the Nature of Interpleader should be dismissed in its entirety.


Dated:          New Orleans, Louisiana
                January 23, 2008



                                    /s/ Dane S. Ciolino_____
                                    Dane S. Ciolino (DC-1964)
                                    DANE S. CIOLINO, LLC
                                    526 Pine Street, Fourth Floor
                                    P.O. Box 850848
                                    New Orleans, LA 70185-0848
                                    Telephone: (504) 834-8519
                                    Facsimile: (504) 324-0143
                                    E-Mail: dciolino@loyno.edu

                                    Counsel of record for Defendants, James R. Dugan, II and Stephen B. Murray d/b/a The Murray Law Firm

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2008, I caused to be electronically filed the foregoing Memorandum in Support of Motion to Dismiss Complaint and Bill in Nature of Interpleader with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered counsel electronically. Pursuant to that notification, a true and exact copy of the foregoing was sent via email, fax, and/or U.S. mail to any party or counsel not receiving electronic service from CM/ECF by ordinary U.S. Mail, this 23rd day of January, 2008.

/s/ Dane S. Ciolino_____
Dane S. Ciolino (DC-1964)

CIVIL DISTRICT COURT

FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 07-6907

GREG MURPHY, GEORGE RAWLINGS, MARK FISCHER,
RAWLINGS & ASSOCIATES, PLLC, AND LOWEY, DANNENBERG,
BEMPORAD & SELINGER, P.C.

v.

JAMES R. DUGAN, II, AND STEPHEN B. MURRAY
D/B/A THE MURRAY LAW FIRM

DIV. F-10

FILED: _____

_____
DEPUTY CLERK

**PETITION FOR DAMAGES, QUANTUM MERUIT, CONCURSUS
AND INJUNCTIVE RELIEF**

NOW INTO COURT, through undersigned counsel, come petitioners James R. Dugan, II,
and Stephen B. Murray d/b/a The Murray Law Firm, who file this petition for damages, quantum
meruit, concursus and injunctive relief relating to legal fees to be allocated in the matter of *Louisiana
Health v. Warner Lambert Co., et al, USDC-EDLA, 2:00-cv-2566, MDL Panel, M21-85, MDL 1348*
("Rezulin Litigation"). Petitioners further aver as follows:

**PARTIES**

1.    Made petitioners in this matter are:

    a.    James R. Dugan, II, a natural person domiciled in Orleans Parish, Louisiana
          ("Dugan"); and,

    b.    Stephen B. Murray d/b/a The Murray Law Firm, a natural person domiciled
          in Orleans Parish, Louisiana ("The Murray Law Firm").

2.    Made defendants in this matter are:

    a.    Greg Murphy ("Murphy"), a natural person domiciled in East Baton Rouge
          Parish, Louisiana, but doing business in Orleans Parish, Louisiana;

    b.    George Rawlings ("Rawlings"), a natural person domiciled in Louisville,
          Kentucky, but doing business in Orleans Parish, Louisiana;

-1-



c. Mark Fischer ("Fischer"), a natural person domiciled in Louisville, Kentucky, but doing business in Orleans Parish, Louisiana;

d. Rawlings & Associates, PLLC ("Rawlings & Associates"), a Kentucky corporation domiciled in Louisville, Kentucky, but doing business in Orleans Parish, Louisiana; and

e. Lowey, Dannenberg, Bemporad and Selinger, P.C. ("Lowey") a law firm domiciled in White Plains, New York, but doing business in Orleans Parish, Louisiana.

3. Venue is proper in Orleans Parish because:

a. many of the events giving rise to this petition occurred in Orleans Parish;

b. much of the work and/or services called for the parties' contract was performed in Orleans Parish; and,

c. much of the work of the joint venture giving rise to this petition was performed in Orleans Parish.

## FACTS

4. From 1994 to 2006, Dugan was a lawyer associated with the law firm of Gauthier, Downing, LaBarre, Beiser and Dean ("Gauthier, Downing Firm"). He worked directly with the late Wendell H. Gauthier.

5. Upon leaving the Gauthier, Downing Firm, Dugan was assigned all right, interest and responsibility for the Rezulin Litigation. Upon joining The Murray Firm, Dugan assigned all right, interest and responsibility for the Rezulin Litigation to The Murray Firm.

6. On August 28, 2000, Wendell Gauthier, James Dugan, and Mark Fischer of Rawlings & Associates entered into a joint venture agreement to prosecute claims on behalf of Blue Cross Blue Shield of Louisiana, and numerous other clients, against Warner-Lambert (subsequently bought by Pfizer in 2000) ("Pfizer") relating to the drug Rezulin ("Rezulin Litigation"). The Rezulin Litigation joint venture agreement expressly provided for a 50/50 division of all attorney fees generated in the litigation between Gauthier/Dugan and Rawlings & Associates.

7. Wendell Gauthier and James Dugan had entered into a similar joint venture agreement with Rawlings & Associates in the Phen-Fen litigation on July 14, 1999. The Phen-Fen litigation was

successfully handled by the Gauthier & Rawlings firms, and the firms divided fees 50/50 in accordance with their joint venture agreement.

8.      The original Blue Cross of Louisiana Rezulin case was filed in Federal Court in New Orleans on August 29, 2000. The Blue Cross Blue Shield of Louisiana case was then transferred by way of the Multidistrict Litigation Panel to the Southern District of New York and assigned to the Honorable Judge Kaplan. A similar Rezulin case was filed by Richard Cohen and the Lowey firm in theSouthern District of New York on behalf of the Eastern States Health and Welfare Fund. The two cases were subsequently consolidated for pre-trial proceedings.

9.      The lawyers and law firms on the consolidated cases, including the defendants, agreed to work together in a joint venture on the Rezulin Litigation, with the Gauthier Firm handling discovery, the Lowey Firm handling law, pleadings, and motions and Rawlings & Associates handling client relations and inventory. The parties worked jointly on a consolidated complaint. The defendant, Pfizer, filed a Motion to Dismiss the consolidated complaint. The parties worked on a Opposition to the Motion to Dismiss. Judge Kaplan granted the Defendant's Motion to Dismiss. The parties jointly worked on drafts for the appeal of the Motion to Dismiss to the United States Court of Appeals for the 2nd Circuit.

10.      Wendell H. Gauthier died December 11, 2001.

11.      Appeals were filed in the summer of 2002. Despite filing the original Blue Cross Blue Shield Case and diligently working on the case until this point, Dugan was excluded from the briefing at the 2nd Circuit by Rawlings & Associates & the Lowey firm. Upon learning of this, Dugan met with Mark Fischer at his office in Louisville, Kentucky to discuss the matter. Fischer's excuse for excluding Dugan from the 2nd Circuit briefing was that he believed that "Dugan no longer wished to work on the case." Dugan reaffirmed to Fischer his continued interest in handling the Rezulin Litigation. The two then agreed to hire Ken Starr to do the appellate work at the 2nd Circuit in a manner similar to what they had done in Phen-Fen.

12.      The 2nd Circuit reversed Judge Kaplan and remanded the case to the trial court.

13.      Corporate depositions of Blue Cross Blue Shield of Louisiana were taken. Greg Murphy and Peter St. Phillip of the Lowey Firm defended the Blue Cross depositions in Baton Rouge, Louisiana.

14.    Thereafter, Pfizer filed Motions for Summary Judgment. Plaintiffs filed Oppositions to the Motions for Summary Judgment. Lowey and Rawlings excluded Gauthier and Dugan from the Opposition to Motion for Summary Judgment, despite repeated requests by Dugan to be involved in the briefing. Instead, Lowey and Rawlings & Associates substituted Greg Murphy for Dugan, negligently or intentionally to interfere with Dugan's contract with his client.

15.    Oral Argument was heard on the Motion for Summary Judgment in Judge Kaplan's Court. Peter St. Philip of the Lowey Firm handled the argument and James Dugan was in attendance. Dugan filed a Notice of Supplemental Authority in support of the Motion for Summary Judgment, citing *Local 68 v. Merck*, a favorable decision denying Motion for Summary Judgment in the Vioxx litigation. Judge Kaplan nonetheless granted defendant's Motion for Summary Judgement.

16.    The Lowey firm and Rawlings & Associates filed appeals at the United States Court of Appeal for the 2nd Circuit, again excluding Dugan from the briefing despite his repeated requests to be included. In December of 2006, Oral Argument was heard at the United States Court of Appeal for the 2nd Circuit on the Motion for Summary Judgment Appeals.

17.    In July 2007, Pfizer and the clients represented by the petitioners reached a tentative settlement of the Rezulin Litigation. This settlement will result in the division of a substantial legal fee among the lawyers participating in the Rezulin Litigation, including the parties to this lawsuit. The defendants, however, have denied that the petitioners have any interest in recovering the legal fees in question—despite the existence of a joint venture.

## COUNT I: BREACH OF CONVENTIONAL OBLIGATION

18.    The petitioners and the defendants entered into a conventional obligation (contract) under which they agreed to work together on the Rezulin Litigation and to divide fees among themselves.

19.    The petitioners worked competently and diligently on the Rezulin Litigation from the time of the parties' agreement through the present. In so doing, the petitioners have satisfied all of their conventional obligations to the defendants.

20.    The defendants, however, have breached their conventional obligation to the petitioners by failing to permit the petitioners to share in the fees generated by the Rezulin Litigation.

21.    The petitioners have suffered harm as a result of the defendants acts or omissions.

-4-

## COUNT II: BREACH OF JOINT VENTURE

22.    The petitioners and the defendants entered into a joint venture agreement under which they agreed to work together jointly on the Rezulin Litigation. Through this agreement, they agreed to share the labor and financial risks associated with the venture. They also agreed to share any financial rewards that might result from their joint work through the recovery of legal fees.

23.    The petitioners worked competently and diligently on the Rezulin Litigation from the time of the formation of the parties' joint venture through the present. Furthermore, the petitioners assumed significant out-of-pocket expenses, incurred lost opportunity costs, and bore other risks in undertaking this joint venture work.

24.    The petitioners have satisfied all of their obligations to the joint venture and to their co-venturers.

25.    The defendants, however, have breached their obligations under the joint venture agreement by failing to permit the petitioners to share in the financial rewards of the venture, more particularly, by failing to permit the petitioners to share in the fees generated by the Rezulin Litigation.

26.    The petitioners have suffered harm as a result of the defendants acts or omissions.

## COUNT III: BREACH OF FIDUCIARY DUTIES

27.    The petitioners and the defendants owed each other fiduciary duties, including duties of loyalty and care, in connection with their joint-venture work on the Rezulin Litigation.

28.    In addition, the petitioners and the defendants owed the Rezulin Litigation joint venture fiduciary duties, including duties of loyalty and care, in connection with their joint-venture work.

29.    The petitioners satisfied all of their fiduciary duties to the joint venture and to their co-venturers through working competently diligently on the Rezulin Litigation from the time of the formation of the parties' joint venture through the present.

30.    The defendants, however, have breached their fiduciary obligations to the joint venture and to the petitioners by intentionally self-dealing and by denying the petitioners an opportunity to share in the financial rewards of the Rezulin Litigation, solely in an effort to unjustly enrich themselves at the expense of the petitioners.

## COUNT IV: VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT

31.    The acts and omissions described above have caused the petitioners to suffer ascertainable loss of money or movable property, corporeal or incorporeal: namely, their substantial interest in the legal fee to be distributed in the Rezulin Litigation.

32.    The ascertainable loss of money or movable property suffered by the petitioners was caused by the use or employment by another person, namely the defendants, of an unfair or deceptive method, act or practice, namely the self-serving exclusion and/or attempted exclusion of petitioners from participation in (a) critical stages of the Rezulin Litigation to the potential detriment of various jointly represented clients, and (b) the fee allocation in the Rezulin Litigation. These self-serving actions were predatorily undertaken by the defendants in an effort to take advantage of the death of Wendell Gauthier to the disadvantage of the petitioners.

33.    The acts and omissions by the defendants described above constitute "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

## COUNT V: DELICT

34.    The negligent and/or intentional acts and omissions of the defendants breached a duty of cared owed to the petitioners.

35.    These negligent and/or intentional acts in breach of duty caused harm to the petitioners.

36.    Pursuant to Louisiana Civil Code articles 2315 and 2317, among others, the defendants are obligated to repair the harm caused by their negligent or intentional acts and/or omissions.

## COUNT VI: CONCURSUS

37.    Two or more persons, namely all the parties to this action, have competing or conflicting claims to money, namely the substantial legal fees to be allocated in the Rezulin Litigation.

38.    Pursuant to Louisiana Code of Civil Procedure articles 4651-4662, all of the parties to this action should be required to assert their respective claims contradictorily against all other parties to the proceeding.

39.    Pursuant to Louisiana Code of Civil Procedure article 4660, the defendants should be enjoined and/or prohibited from instituting or prosecuting in any court of this state or of the United States any other action or proceeding on the claim involved in the concursus proceeding

## COUNT VII: QUANTUM MERUIT

40.    In the alternative, the defendants, through the acts and omissions described above, have been unjustly enriched by the petitioners' work in the Rezulin Litigation. More particularly, the legal work performed by the petitioners in the Rezulin Litigation has caused or will cause the defendants to receive substantial legal fees as a result of the risks and work undertaken by the petitioners.

41.    To allow the defendants to retain the uncompensated fruits of the petitioners' efforts would be unjust because doing so would unjustly enrich the defendants. To avoid permitting the defendants to be unjustly enriched, the court should order them to disgorge to the plaintiffs that portion of the Rezulin Litigation fee attributable to the efforts, work and risk undertaken by the petitioners.

42.    To allow the defendants to retain the uncompensated fruits of the petitioners' Rezulin Litigation efforts would be unjust because doing would cause the petitioners to suffer financial damages. To compensate the petitioners for the work and risk they undertook in connection with the Rezulin Litigation, the court should order the defendants to pay to the petitioners that portion of the Rezulin Litigation fee attributable to the efforts, work and risk undertaken by the petitioners.

### PRAYER FOR RELIEF

43.    WHEREFORE, plaintiffs respectfully request that judgment be granted in their favor and against the defendants in the following particulars:

a.    requiring all parties to assert their respective claims to the fees to be allocated in the Rezulin Litigation contradictorily against all other parties to the proceeding, pursuant to Louisiana Code of Civil Procedure articles 4651-4662;

b.    enjoining the defendants, pursuant to Louisiana Code of Civil Procedure article 4660, from instituting or prosecuting in any court of this state or of the United States any other action or proceeding on claim to legal fees in the Rezulin Litigation involved in this concursus proceeding;

c.    awarding damages to the petitioners for harm suffered by them as a result of the defendants' breach of contract, breach of fiduciary duties, violation of the Louisiana Unfair Trade Practices Act and breach of duties under Louisiana Civil Code articles 2315 and 2317;

-7-

d.   in the alternative, awarding the petitioners quantum meruit in the amount of that portion of the Rezulin Litigation fee received by the defendants that is attributable to the efforts, work and risk undertaken by the petitioners;

e.   awarding to the petitioners all attorneys' fees and costs associated with this action; and,

f.   awarding to the petitioners such other relief allowed by law and equity.

Respectfully submitted, in New Orleans, Louisiana on this 18th day of July, 2007.

_Dane S. Ciolino_

Dane S. Ciolino, La. Bar No. 19311
DANE S. CIOLINO, LLC
526 Pine Street, Fourth Floor
P.O. Box 850848
New Orleans, LA 70185-0848
Telephone: (504) 834-8519
Fax: (504) 324-0143
E-Mail: dciolino@loyno.edu

Stephen Murray, Sr., Esq.
Stephen Murray, Jr. Esq.
James R. Dugan, II, Esq.
THE MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100

Counsel of Record for Petitioners

PLEASE SERVE THROUGH THE LOUISIANA LONG ARM STATUTE:

PLEASE SERVE:

Greg Murphy, Esquire
6555 Perkins Rd., Suite 200
Baton Rouge, Louisiana 70808

George Rawlings
Mark Fischer
Rawlings & Associates, PLLC
325 West Main Street, Suite 1700
Louisville, Kentucky 40202

Lowey, Dannenberg, Bemporad & Selinger, P.C.
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              :       MASTER FILE
                                                    :       00 Civ. 2843 (LAK)
REZULIN PRODUCT LIABILITY LITIGATION (MDL          :
NO. 1348)                                           :

This Document Relates To:   07 Civ. 11205 (LAK)     :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/6/08

**PRETRIAL ORDER NO. 445**
(*Dugan* - Motion to Remand)

LEWIS A. KAPLAN, *District Judge*

This motion arises in consequence of a dispute over legal fees relating to some of the litigation involved in this MDL.

James R. Dugan, II and Stephen B. Murray, d/b/a The Murray Law Firm, brought this action in a Louisiana state court against Greg Murphy, George Rawlings, Mark Fischer, Rawlings and Associates, PLLC (the "Rawlings Firm"), and Lowey Dannenberg Bemporad & Sellinger, PC ("Lowey Dannenberg"). They claim in substance that "[t]he lawyers and law firms on the consolidated cases [i.e., two suits brought against Warner-Lambert on behalf of third-party payors] entered into a joint venture with" plaintiffs' predecessor-in-interest "to work together . . . on the Rezulin Litigation" (pet. ¶ 9) and that the defendants breached their obligations to share attorneys' fees that have been or will be generated by that litigation.

Defendants removed the action to the Eastern District of Louisiana on the basis of diversity of citizenship. The Panel sent the case to here along with plaintiffs' motion to remand in which they argue that they and defendant Murphy are citizens of Louisiana and that the requisite complete diversity of citizenship is lacking. Defendants counter that Murphy was joined solely to defeat diversity and that his citizenship therefore should be disregarded.

This Court has written more than once in this MDL on the standards governing claims of improper joinder, and no purpose would be served by replowing that field. *E.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d 272, 279-80 (S.D.N.Y. 2001). Suffice it to say for present purposes that Murphy's non-diverse citizenship may be disregarded only if there is a reasonable possibility that the highest court of the state in question would conclude that the claim against Murphy is sufficient.

It is quite true, as defendants argue, that Murphy is barely mentioned in the petition.



EXHIBIT
B

Moreover, it seems quite likely that he was named here precisely for the purpose that defendants allege. Nevertheless, paragraph 9 of the petition clearly asserts, if only in conclusory terms, that there was a joint venture among plaintiff's predecessor and "the defendants," a term that unquestionably includes Murphy. The petition goes on to allege that "the defendants" breached their obligation to share fees and that plaintiffs therefore have been harmed. Pet. ¶¶ 20-21. In consequence, the legal sufficiency of the petition cannot seriously be questioned. As defendants have submitted no evidence in support of their position, the question whether plaintiffs' allegations are factually supported is not before the Court.

Accordingly, the motion to remand the action to the Civil District Court for the Parish of Orleans, State of Louisiana, is granted.

SO ORDERED.

Dated:        January 16, 2008

Lewis A. Kaplan
United States District Judge

2

# EXHIBIT C

# FILED UNDER SEAL

## MURRAY LAW FIRM

SUITE 1100 POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130

STEPHEN B. MURRAY*
STEPHEN B. MURRAY, JR.
JULIE A. ARDOIN**
ARTHUR M. MURRAY
NICOLE IEYOUB-MURRAY
JESSICA W. HAYES
JAMES R. DUGAN, II
JUSTIN BLOOM ****
DOUGLAS R. PLYMALE, Ph.D.

*   CERTIFIED AS A SPECIALIST IN
    CIVIL TRIAL ADVOCACY BY THE NATIONAL
    BOARD OF TRIAL ADVOCACY
**LICENSED IN LA & MS
***LICENSED IN LA & TX
****LICENSED IN FL & NY

TELEPHONE 504.525.8100
1.800.467.8100
FAX 504.584.5249
www.murray-lawfirm.com

OF COUNSEL
JOSEPH A RACE
ROBERT J. DILIBERTO***
DAMON A. KIRIN

WILLIAM W. GOODELL, JR., LL.M.
Energy and Environment

January 18, 2008

**Via Facsimile & E-Mail**

Steven Glickstein, Esq.
Kaye Scholer
425 Park Ave
New York, NY 10022-3598

Re:    LOWEY DANNENBERG COHEN, P.C., in its capacity as account holder
       of, and party with interest in, the REZULIN SETTLEMENT FUND, vs.
       JAMES R. DUGAN, II, STEPHEN B. MURRAY d/b/a THE MURRAY
       LAW FIRM, RAWLINGS AND ASSOCAITES, PLLC, GREG
       MURPHY; MORAIN & MURPHY, LLC, WALLACE JORDAN
       RATIFF & BRANDT, LLC, ELWOOD S. SIMON & ASSOCIATES,
       P.C., KERSHAW, CUTTER & RATINOFF, LLP, BERMAN
       DEVALERIO PEASE TABACCO BURT & PUILLO, MARK FISCHER,
       GEORGE RAWLINGS

Dear Steve:

       I would like to respectfully request a written response by you, The Kaye Scholer Law
Firm, and Pfizer as to the claims by Richard Cohen in the above referenced case. I direct you to
the attached Complaint and Bill In The Nature Of An InterPleader page 7 paragraph 23. (Exhibit
A)

       In pertinent part:

       23.    (In connection with such settlement proposal, if a sufficient quantum of insurers agreed,
Pfizer would pay into a settlement fund to be maintained by Plaintiff an aggregate amount
computed by (a) multiplying the number of covered lives representing by all participating



*insurers times and agreed-upon amount per life, plus (b) $5,000,000 to cover (i) payments to the two litigating insurers, (ii) all settling insurer's **legal fees and disbursements.**)*

This paragraph seems to contradict paragraph 29 of the settlement agreement reached on or about July 12, 2007 with Pfizer, Richard Cohen, and Mark Fischer and certain health insurance companies. (Exhibit B)

In pertinent part:

Paragraph 29: Neither Pfizer nor Warner-Lambert has agreed to pay any Participating Health Plan's legal fees, disbursements or cost of litigation, nor do they have any interest in whether or how Participating Health Plans compensate their legal counsel.

Is paragraph 29 of the settlement agreement Pfizer's position? Or, is Richard Cohen's assertion in the above referenced paragraph 23 of his complaint correct?

In addition, Judge Karas has issued an Order setting a hearing to show cause on Richard Cohen's Motion for Temporary Restraining Order, and Preliminary and Permanent Injunctive Relief for January 31, 2008 10:30 a.m. at the United States Southern District of New York courthouse 300 Quarropas Street, White Plains, New York 10601-4150 (Exhibit A). I would respectfully request your voluntary attendance to testify as to your knowledge of how attorney's fees were determined in this case. Can you please respond in writing that you will voluntarily appear or would you prefer to be served by subpoena?

In conclusion, as we are under close deadlines can you please respond to the above by the close of business January 21, 2008. Your cooperation is greatly appreciated.

Very truly yours,

James R. Dugan, II

JRD/tb

cc:   Dane Ciloino
      Steve B. Murray, Sr.
      Douglas R. Plymale, Ph.D
      Greg Murphy
      Kim West
      Elwood S. Simon
      Steve Lowey
      Richard Cohen
      Brooks Cutter
      Joe Tobacco
      Mark Fischer
      George Rawlings (Rawlings and Associates)