IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

LOWEY DANNENBERG COHEN,
P.C., in its capacity as account holder of, and
party with interest in, the REZULIN
SETTLEMENT FUND,

                Plaintiff,

   - vs -

JAMES R. DUGAN, II, STEPHEN B.
MURRAY d/b/a THE MURRAY LAW FIRM,
RAWLINGS AND ASSOCIATES, PLLC,
GREG MURPHY, MORAIN & MURPHY, LLC,
WALLACE JORDAN RATLIFF & BRANDT,
LLC, ELWOOD S. SIMON & ASSOCIATES,
P.C., KERSHAW, CUTTER & RATINOFF,
LLP, BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO, MARK
FISCHER, GEORGE RAWLINGS, SHIPMAN
& GOODWIN, LLP

                Defendants.

Case No. 08 Civ. 0461 (LAK)

HONORABLE LEWIS A. KAPLAN

**ECF CASE**

---

**PLAINTIFF'S CONSOLIDATED REPLY MEMORANDUM
OF LAW (1) IN FURTHER SUPPORT OF ITS MOTION FOR
PRELIMINARY AND PERMANENT INJUNCTION AND (2) IN
OPPOSITION TO DEFENDANTS JAMES R. DUGAN, II'S
AND STEPHEN B. MURRAY, d/b/a THE MURRAY LAW
<u>FIRM'S MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    THE DUGAN DEFENDANTS' MOTION TO
      DISMISS SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Plaintiff Has Adequately Identified the Fund
            As 100% of the Pot of Attorneys' Fees and Expenses
            Generated by the Settlement and Deposited the
            Entirety of the Fund in the Registry of the Court . . . . . . . . . . . . . . . . 5

      B.    The Complaint Satisfies the Minimum
            Diversity Requirement of 28 U.S.C. § 1335 . . . . . . . . . . . . . . . . . . . . 8

      C.    Plaintiff Has Established the Requisite Adversity . . . . . . . . . . . . . . . . 8

      D.    The "First to File" Rule Does Not Apply to this Action . . . . . . . . . . . . . 9

            i.     The Assumption of Jurisdiction By Either Court
                   Over Any Res or Property . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            ii.    The Inconvenience of the Federal Forum . . . . . . . . . . . . . . . . . . . 12

            iii.   The Avoidance of Piecemeal Litigation . . . . . . . . . . . . . . . . . . . . 12

            iv.    The Order in which Jurisdiction was Obtained . . . . . . . . . . . . . . . 13

            v.     Whether State or Federal Law Supplies the Rule of Decision . . . . . . . . . . 13

            vi.    Whether the State Court Proceeding Will Adequately Protect the
                   Rights of the Party Seeking to Invoke Federal Jurisdiction . . . . . . . . . . . . 14

II.   THE COURT SHOULD ORDER A PRELIMINARY AND
      PERMANENT INJUNCTION AGAINST COMPETING LITIGATION . . . . . . . . . 14

A.   A Preliminary and Permanent Injunction Are Essential to
Avoid Duplicative Litigation and Multiple Inconsistent Liability
Resulting from Conflicting and Adverse Claims to the Fund  . . . . . . . . . . . . . . 14

B.   Irreparable Harm Will Result If No Injunction Is Entered  . . . . . . . . . . . . . . . . . 15

C.   Plaintiff Has a Reasonable Likelihood of Success on the Merits  . . . . . . . . . . . . . .

D.   The Balance Of Hardships Tip Decidedly In Favor Of Plaintiff  . . . . . . . . . . . 17

E.   The Dugan Defendants' Arguments in Opposition to an
Injunction Against Competing Litigation Are Without Merit  . . . . . . . . . . . . . . 17

F.   Plaintiff and Multiple Defendants Are Not Subject
to the Jurisdiction of the Louisiana State Court  . . . . . . . . . . . . . . . . . . . . . . . 18

III.  THE ANTI-INJUNCTION ACT DOES NOT PRECLUDE
THIS COURT FROM ENJOINING THE LOUISIANA ACTION  . . . . . . . . . . . . . . 20

IV.  PLAINTIFF DOES NOT HAVE UNCLEAN HANDS;
RATHER, THE DUGAN DEFENDANTS DO  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.   PLAINTIFF'S *IN REM* INTERPLEADER ACTION WAS NOT A
COMPULSORY COUNTERCLAIM IN THE *DUGAN v. MURPHY* ACTION  . . . . . 23

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

*Am. Int'l Speciality Lines Ins. Co., v. Nat'l Ass'n of Business Owners and Professionals,*
      253 F. Supp. 2d 468 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*American Family Mut. Ins. Co. v. Brown,*
      2007 WL 1586125 (D. Kan. May 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Austed Co. v. Pennie & Edmunds,*
      823 F.2d 223 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bankers Trust Co. of Western New York v. Crawford,*
      559 F. Supp. 1359 (W.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 16, 17

*Bosarge v. Master Mike, Inc.,*
      669 So.2d 510 (La. App. 4 Cir. 1/31/96) *writ denied*
      (La.3/22/96), 669 So.2d 1214 (La. 3/22/96) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bradley v. Kochenash,*
      44 F.3d 166 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Burnett v. Physician's Online, Inc.,*
      99 F.3d 72 (2d Cir 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Cantuba v. American Bureau of Shipping,*
      709 So.2d 263 (La. App. 4 Cir. 3/4/98) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,*
      348 F. Supp. 2d 217 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Citigroup Global Markets, Inc. v. KLCC Investments, LLC,*
      2007 WL 102128 (Jan. 11, 2007 S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Colon v. Coughlin,*
      58 F.3d 865 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Colorado River Water Conservation District v. United States,*
      424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dedeaux v. Dymond,*
      792 So.2d 938 (La. App. 4 Cir.8/1/01) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Federal Ins. Co. v. Tyco Int'l,*
      422 F.Supp.2d 357 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*F.D.I.C. v. Four Star Holding, Co.,*
    178 F. 3d 97 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12

*Fabricant v. Sears, Roebuck,*
    202 F.R.D. 306 (S.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Farmer's Irrigating Ditch & Reservoir Co. v. Kane,*
    845 F. 2d 229 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Fidelity Brokerage Services LLC v. Bank of China,*
    192 F. Supp. 2d 173 (S.D.N.Y. 2002); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fox v. Board of Supervisors of Louisiana State University,*
    576 So.2d 978 (La. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Frequency, LLC v. Clear Channel Broadcasting, Inc.,*
    2007 WL 4055984, at 2 (S.D.N.Y. Nov. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,*
    535 U.S. 826 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Ark-La-Tex Timber Co., Inc.,*
    477 F.3d 319 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mark E. Mitchell, Inc. v. Charleston Library Soc.,*
    114 F. Supp.2d 259 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . 4, 14, 15, 16, 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente,*
    No. 98 Civ. 1756, 2001 WL 11070 (S.D.N.Y. Jan. 4, 2001) . . . . . . . . . . . . . . . . . . 9

*Metropolitan Life Ins. Co. v. Chase,*
    294 F.2d 500 (3d Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Network Solution, Inc. v. Clue Computing, Inc.,*
    946 F. Supp. 858 (D. Colo. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*New York Life Ins. Co. v. Connecticut Dev. Auth.,*
    700 F.2d 91 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

*Nippert v. Baton Rouge Railcar Services, Inc.,*
    526 So.2d 824 (La. App. 1 Cir. 3/7/88) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*North American Marketing Corp. v. K. Gronbach & Assoc., Inc.,*
    221 F.R.D. 296 (D. Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*North Atlantic Instruments, Inc. v. Haber,*
    188 F.3d 38 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Raytheon Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
    306 F. Supp.2d 346 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reines Distributors, Inc. v. Admiral Corp.*,
    182 F. Supp. 226 (S.D.N.Y. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rivera v. Barnhart*,
    494 F. Supp.2d 228 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Standard Oil Co. of Texas v. Lopeno Gas Co.*,
    240 F.2d 504 (5th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State Farm Fire & Cas. v. Tashire.*,
    386 U.S. 523, 87 S.Ct. 1199 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United Artists Corporation v. Fields Productions, Inc.*,
    363 F. Supp. 903 (D.C.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vendo Co. v. Lektro-Vend Corp.*,
    433 U.S. 623 (1973); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATUTES

28 U.S.C. § 1335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

28 U.S.C. § 2361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Fed R. Civ. P.65(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## MISCELLANEOUS

7 Wright, Miller & Kane, § 1704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## PRELIMINARY STATEMENT

From 2001 to 2007 eight law firms from seven different states collaborated to prosecute claims in this Court on behalf of two health benefit providers (the "litigating insurers") to recover payments for the prescription drug Rezulin from its manufacturer, Pfizer Inc.'s subsidiary Warner Lambert Company ("Warner Lambert") (Warner Lambert and Pfizer Inc. are referred to collectively as "Pfizer").[1] Cplt, ¶ 2. These claims were prosecuted in this Court and in two appeals before the Second Circuit Court of Appeals. Cplt, ¶ 2. By written agreement dated as of July 12, 2007 (the "Settlement Agreement"), these two litigating insurers agreed with Pfizer to settle a wide variety of pending and potential claims, including their claims relating to Rezulin, subject to two key conditions subsequent (the "Settlement"). Cplt, ¶ 30-32. These two conditions were the execution of the Settlement Agreement by additional non-litigating insurers covering a major share of privately-insured Americans and dismissal of the two litigating insurers' then-pending appeal (the "Appeal"). *Id.*

Thereafter, 50 non-litigating insurers, covering approximately 75 million U.S. lives, executed the Settlement Agreement, and on September 14, 2007, the Second Circuit dismissed the Appeal upon stipulation of all parties thereto. Cplt, ¶ 32. In September and October 2007, Pfizer paid a total of $16,047,438.55 to fund the Settlement directly into Citibank account No.

---

[1]    "Cplt, ¶ __" refers to Plaintiff's Verified Amended Complaint in the Nature of a Statutory Interpleader filed January 28, 2008, a copy of which is attached to the January 28, 2008 Declaration of Richard W. Cohen as Exhibit 1. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ( "A verified complaint is to be treated as an affidavit."). The amendment added one party which had been omitted inadvertently as a defendant in the original pleading (Shipment & Goodwin, LLP), pleads that the entire Fund has been deposited in the registry of the Court, and clarifies that the Fund so deposited constitutes 100% of the pot of legal fees and expenses generated by the Settlement.

009977643705 which was established by Plaintiff "as Attorneys for the Fund," solely for purposes of administering the Settlement (the "Fund"). Cplt ¶ 1. By agreement among the settling insurers to a plan of allocation, $4.45 million of that amount was earmarked to pay legal fees and expenses. Cplt, ¶ 31.

On July 18, 2007, two months before the Settlement was funded, Defendants James Dugan, II, and Stephen Murray (the "Dugan Defendants") sued Plaintiff and two of the other prosecuting law firms in the Civil District Court of the Parish of Orleans in New Orleans, Louisiana claiming damages for nonpayment of legal fees from the Settlement, notwithstanding that there was not yet a Settlement nor any legal fees to distribute (the "Louisiana Action"). Cplt, ¶ 40.

Even worse, before the Settlement became final, when the Dugan Defendants learned that dismissal of the Appeal was a condition precedent to closing of the Settlement, in august and September 2007, they filed applications in the Second Circuit attempting to **block** dismissal of the Appeal. If successful, these applications, filed in contravention of the wishes of all parties to the Settlement, would have prevented the Settlement from occurring and prevented creation of the Fund, the same Fund from which the Dugan Defendants are seeking fees. Cplt, ¶ 33-34. The Dugan Defendants' efforts failed, and on September 14, 2007, the Second Circuit dismissed the Appeal.

After the appeal was dismissed and Pfizer agreed to consummate the Settlement, in September and October 2007, Plaintiff disbursed $11,621,433.27 from the Fund (that figure includes accrued interest) to the 52 settling insurers (or to their attorneys on their behalf). Cplt, ¶ 4. All remaining money in the Fund, $4,500,000 plus accrued interest, remained in the

Settlement account, and not one cent has been paid from the Fund to date to anyone other than the settling insurers. Cplt, ¶ 5. Plaintiff has now interpleaded the Fund and deposited it into the registry of this Court so that all the interested parties may be gathered before a single court of competent jurisdiction to resolve this regrettable fee dispute once and for all.

The Dugan Defendants want to prosecute this case in their local Louisiana court,[2] despite its complete lack of any nexus to the Fund, to the Rezulin Litigation, to 51 of the 52 parties to the Settlement, or to seven of the other eight law firms with claims to the legal fees generated from the Settlement. Not only is the Louisiana state forum an inappropriate forum for such proceedings, it lacks personal jurisdiction over the majority of the claimants to the Fund, all of whom are subject to the jurisdiction of this Court. The federal interpleader statute was designed precisely for a situation such as this, to gather all claimants to an identifiable *res* in one court and prevent multiplicitous litigation, so that one judgment may be entered determining all parties' respective entitlements to a fund. Only this interpleader action in this Court can achieve that goal — the Louisiana Action cannot.

## SUMMARY OF ARGUMENT

Before the Court are two motions: (1) Plaintiff has moved pursuant to 22 U.S.C. § 2361 for a preliminary and permanent injunction barring competing litigation over entitlement to fees from the Fund; and (2) the Dugan Defendants have moved to dismiss the Complaint.

---

[2] The Court may take judicial notice of the fact that the Honorable Patricia Rivet Murray, the wife of Dugan Defendant Stephen B. Murray, is a judge on Louisiana's Fourth Circuit Court of Appeals, which has appellate jurisdiction over the trial court in which the Dugan Defendants filed the Louisiana Action. *See* http://4thcir-app.state.la.us/judge.aspx?queryString?19?Judge Patricia Rivet Murray.

The Dugan Defendants' motion to dismiss Plaintiff's Verified Complaint[3] must be denied. Plaintiff has adequately alleged an entitlement to interplead the funds before the Court under 28 U.S.C. § 1335. The Dugan Defendants' dismissal motion is based on a recitation of allegations which contradict the Complaint, and baseless claims which question the veracity of Plaintiff's verified allegations. In ruling on a motion to dismiss under Rule 12, all factual allegations must be accepted as true. *See, e.g., Rivera v. Barnhart*, 494 F. Supp. 2d 228, 230 (S.D.N.Y. 2007). The Dugan Defendants' legal arguments that the minimum diversity and deposit elements of 28 U.S.C. § 1335 are not met by the Complaint, are specious.

Plaintiffs' motion for a preliminary and permanent injunction under 28 U.S.C. § 2361 preventing the Dugan Defendants from prosecuting competing litigation should be granted. Absent the injunction, (1) Plaintiff (and most Defendants) will suffer irreparable harm by facing potential litigation in multiple *fora*, (2) Plaintiff has a reasonable likelihood of success on the merits due to the liberal construction of 28 U.S.C. 1335, the explicit power of the court to issue the requested relief pursuant to 28 U.S.C. § 2361, and the fact that "injunctive relief in an interpleader action is 'especially proper' when there are numerous claimants and where such relief would prevent multiplicity of lawsuits," and (3) the balance of hardships tips decidedly in favor for Plaintiff, and the Dugan Defendants (and the other Defendants to this action) will suffer no measurable harm.[4]

---

[3]     The Dugan Defendants style their motion as one pursuant to Fed. R. Civ. P. 12(c). We treat this as an inadvertent error, as the action is not ripe for a Rule 12(c) motion. However, the standards for Rule 12(b)(6) and 12(c) motions are virtually identical.

[4]     *Mark E. Mitchell, Inc. v. Charleston Library Soc.*, 114 F. Supp. 2d 259, 262 (S.D.N.Y. 2000); *Bankers Trust Co. of Western New York v. Crawford*, 559 F. Supp. 1359, 1362 (W.D.N.Y. 1983)); *American Family Mut. Ins. Co. v. Brown*, No. 06-1339-JTM, 2007 WL

Without an injunction, Lowey Dannenberg will be subject to potential litigation in Louisiana and multiple other *fora*, none of which could resolve the claims of all of the parties to their respective shares of the Fund.  While Plaintiff wishes that no court had to be bothered with this dispute, the reality is there are multiple claimants with adverse claims to the Fund who, although situated in eight different states, all obtained their claims through litigation before <u>this</u> Court and a Settlement which was negotiated and consummated entirely in <u>this</u> District.  The federal interpleader statute is the only proper method to resolve this dispute and this Court is the only proper venue for this action to be adjudicated.

I.    <u>**THE DUGAN DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**</u>

In their motion to dismiss, the Dugan Defendants contend that Plaintiff has not pleaded jurisdictional elements necessary under 28 U.S.C. § 1335 for a statutory interpleader action, namely that (1) "two or more adverse claimants of diverse citizenship claim rights to the money or property" and (2) "plaintiff has deposited such money or property . . . into the registry of the Court," *Dugan Brf.* at 6-10.  These contentions are, by turns, spurious and moot.  Indeed, this Court's jurisdiction is exclusive.[5]

    A.    **Plaintiff Has Adequately Identified the Fund**
         **As 100% of the Pot of Attorneys' Fees and Expenses**
         **Generated by the Settlement and Deposited the**
         **Entirety of the Fund in the Registry of the Court**

---

1586125, at *3 (D. Kan. May 31, 2007) (granting permanent injunction where numerous claimants and the possibility of multiplicity of lawsuits were present holding  "injunctive relief is especially proper where there are numerous claimants and where such relief would prevent a multiplicity of lawsuits.").

    [5]    *F.D.I.C. v. Four Star Holding, Co.*, 178 F. 3d 97, 102 (2d Cir. 1999) ("in cases where a court has custody of property, that is, proceedings in rem or quasi in rem ... the state or federal court having custody of such property has exclusive jurisdiction to proceed.")

The Dugan Defendants argue that the Complaint has not satisfied the elements of 28

U.S.C. § 1335, because Plaintiff had not deposited the entire amount in controversy in the

registry of the Court nor made the exact amount in controversy "identifiable." Both arguments

are obviously wrong.

Pursuant to this Court's January 25, 2008 Order, Plaintiff deposited the entire Fund,

consisting of $4,560,588.47, in the registry of the Court, mooting any argument that the Court

lacks jurisdiction over the *res* under 28 U.S.C. § 1335.[6] The Dugan Defendants' unsupported

speculation that the amount of the Fund is not the total legal fees and expenses generated by the

Settlement is contrary to the specific allegations of the Verified Complaint, which alleges that the

Fund represents 100% of the amounts remaining after settlement payments to the clients, and no

legal fee or expense payments have been made to any of the counsel. Cplt, ¶ 5–7. The

unrebuttable fact is that this is the entire amount of money available for the payment of attorneys

pursuant to agreement among the clients. Contrary facts are simply unavailable, notwithstanding

the Dugan Defendants' claim that they get paid more handsomely in other cases.

That is all that is at issue in this action, the Louisiana Action, or in any other competing

action that any of the other Defendants could initiate in their respective state courts (absent an

injunction under 28 U.S.C. § 2361). Nor could  the Dugan Defendants honestly claim otherwise.

On July 18, 2007, Defendant Dugan wrote a letter to Defendant Fischer, memorializing a

---

[6]    In *Federal Ins. Co. v. Tyco, Int'l.*, 422 F. Supp. 2d 357, 396 (S.D.N.Y. 2006),
Court further stated that "[I]t is equally clear that the failure to deposit the stake with the Court's
registry alone would not warrant outright dismissal of the interpleader action for lack of
jurisdiction. Rather, it would be error to dismiss the complaint 'without affording an opportunity
to cure.'"

conversation in which Dugan acknowledged that his claim was for "1/3 of the total attorney's fees issued in this case."[7] After acknowledging that "approximately $300,000 to $500,000 will be going to Blue Cross Blue Shield of Louisiana and Eastern States Health and Welfare Fund" Defendant Dugan acknowledged his understanding that pursuant to the terms of the Settlement Agreement, "the total attorney's fees . . . are approximately 4.5 million to 4.7 million. My demand is for 1/3 of that amount or 1.5 million." *Id.* (Emphasis added.) That is all the Dugan Defendants' Louisiana Action concerns, and their strained arguments to the contrary are frivolous.[8]

The Fund deposited in the registry of this Court represents 100% of the attorneys fees available. Cplt, ¶ 7. Zero fees have been paid. *Id.* The Dugan Defendants' claim, if any, to a portion of the Fund, is limited by the Fund itself. Moreover, even if the Dugan Defendants' claims could theoretically exceed the Fund itself (which they cannot), the Dugan Defendants can assert whatever claims they may have to legal fees in this action. *See, e.g., New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91 (2d Cir. 1983), where the Second Circuit stated:

> we are of the view that it would have been within the district court's power and discretion to adjudicate [the interpleader defendant's] claims for consequential damages arising out of [a stakeholder's] allegedly tortious withholding of the cash surrender value of the insurance policies, . . . and thereafter to enjoin

---

[7]    *See* Exhibit 21 to the January 28, 2008 Declaration of Richard W. Cohen filed herewith and Exhibit A thereto.

[8]    The Dugan Defendants' Louisiana Action complaint is replete with admissions that the sole object of such action is Dugan Defendants' claim of entitlement to recover a portion of the attorneys' fees generated by the settlement of the *Rezulin* litigation. *See, e.g.,* Cohen Decl., Ex. 5, at Introduction (Dugan Defendants "file this petition for damages, quantum meruit, concursus and injunctive relief **relating to legal fees to be allocated** in [the *Rezulin* litigation]" (emphasis added). *See also* ¶¶ 18, 20, 22, 25, 30, 31, 37, 42 of such complaint.

permanently [the interpleader defendant's] prosecution of such
claims.

*New York Life*, 700 F.2d at 96, citing 28 U.S.C. § 2361.

### B.    The Complaint Satisfies the Minimum Diversity Requirement of 28 U.S.C. § 1335

The Complaint easily satisfies the minimal diversity requirements of 28 U.S.C. § 1335.  It

pleads the adverse claims to the Fund of parties who are citizens of eight different states.  Cplt,

¶¶ 11-20.[9]

### C.    Plaintiff Has Established the Requisite Adversity

The Dugan Defendants' assertion that Plaintiff cannot establish that there are two or more

claimants with adverse claims borders on the frivolous.  Here, there are eight law firms in seven

different states (not including the Dugan Defendants) that claim entitlement to be reimbursed for

their time and expenses, out of the Fund, including Plaintiff Lowey Dannenberg.[10]  Lowey

Dannenberg, as the account holder for the Fund, could not safely determine all of the various

---

[9]    The parties which assert claims to the Fund are citizens of (1) Alabama, (2) California, (3) Connecticut, (4) Kentucky, (5) Louisiana, (6) Massachusetts, (7) Michigan, and (8) New York.

[10]    The Dugan Defendants' assertion that Plaintiff is not entitled to prosecute this interpleader action because "plaintiff must establish that it is not independently liable to the claimants" (*Dugan Brf.* at 10) constitutes a fundamental misunderstanding of interpleader actions, and a misinterpretation of the readily distinguishable case law upon which they have relied.  For example, in *Bradley v. Kochenash*, 44 F.3d 166 (2d Cir. 1995).  As the Court noted, "these are not conflicting claims of the right to ownership of an identifiable fund or piece of property; they are claims that each plaintiff violated his respective duties to the two sets of defendants because [of] the price at which the deal was struck."  *Bradley*, 44 F.3d at 169. Similarly, in *North American Marketing Corp. v. K. Gronbach & Assoc., Inc.* 221 F.R.D. 296, 298 (D. Conn. 2002), the Court denied interpleader relief in a case where "the present facts are not typical of an interpleader claim, such as where claims are made against a party whose obligation is fixed, . . . apart from the claims asserted by the claimants."

claims to the Fund by all Defendants and itself without great hazard and possible multiple

liability and therefore properly started this interpleader action.

"Courts have consistently held that the fear of multiple claims and vexatious litigation are

enough to sustain an interpleader action regardless of the merits of the competing claims."

*Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, No. 06 Civ. 5466 2007 WL 102128

(Jan. 11, 2007 S.D.N.Y.); *Fidelity Brokerage Services LLC v. Bank of China*, 192 F. Supp. 2d

173, 178 (S.D.N.Y. 2002); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ.

1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001). The *Citigroup* Court held that "it is

immaterial whether the stakeholder believes that all the claims against the fund are meritorious.

Indeed, in the usual case, at least one of the claims will be quite tenuous." *Citigroup*, 2007 WL

102128, at *6 (quoting 7 Wright, Miller & Kane, § 1704). "The stakeholder should not be

obliged at its peril to determine which of two claimants has the better claim." *Citigroup*, 2007

WL 102128, at *6 (citing *John Hancock Mutual Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d

Cir.1953)).

Thus, Plaintiff has adequately alleged adversity.

### D.    The "First to File" Rule Does Not Apply to this Action

The Dugan Defendants argue this action should be dismissed or stayed in deference to the

Louisiana Action, under the "first to file" rule. However, the "first to file" rule provides only that

"where an action is brought in one **federal** district court and a later action embracing the same

issue is brought in another **federal** court, the first court has jurisdiction to enjoin the prosecution

of the second action, [absent] special circumstances which justify giving priority to the second

action." (Emphasis added.) *Raytheon Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 306

F. Supp. 2d 346, 352 (S.D.N.Y. 2004) (citations omitted).  The rule "is intended to avoid

confusion and conflict among the various **federal** courts." (Emphasis added.)  *Id.* at 353.

Therefore it is not applicable to the current action.[11]

Instead, it is black letter law that:

> "[w]hen faced with parallel proceedings in state court, the starting
> point for federal district courts, as the Supreme Court stated in
> *Colorado River Water Conservation District v. United States*, 424
> U.S. 800, 817 (1976) is the '**virtually unflagging obligation . . .
> to exercise the jurisdiction given them.**"

(Emphasis added.)  *Citigroup*, 2007 WL 102128, at *3 (citing *Royal and Sun Alliance Ins. Co. of*

*Canada v. Century International Arms, Inc.*, 466 F.3d 88, 93 (2d Cir 2006)).  To perform its

virtually unflagging obligation, "[t]he task of the district court is not to find some reason *for* the

exercise of jurisdiction, but rather to determine whether 'exceptional circumstances' or the

'clearest of justifications' exists to justify the surrender of jurisdiction." (Emphasis in original)

*Citigroup*, 2007 WL 102128, at *3 (citing *Moses H. Cone Mem'l Hos. v. Mercury Constr. Corp.*,

460 U.S. 1, 25-26 (1983) (district court abused its discretion by surrendering jurisdiction and

granting a stay because of the inadequacy of the state-court action to protect all parties' rights);

*Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the

exception, not the rule.").

In making a determination on whether to abstain, the Court must balance six factors with

the "balance heavily weighted in favor of the exercise of jurisdiction." *Burnett v. Physician's*

---

[11]     The Dugan Defendants admit that this is the correct application of the rule stating
in their brief that the rule applies to a complaint "previously filed in another district." Def. Mem.
at 10.

*Online, Inc.*, 99 F.3d 72, 76 (2d Cir 1996) (vacating dismissal of federal court action where court did not properly weigh relevant six factors). The six factors are (1) the assumption of jurisdiction by either court over any *res* or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.* The Dugan Defendants failed to address any of the six factors and thus have failed to even challenge the presumption that weighs "heavily" in favor of this Court's jurisdiction.

Moreover, all six factors weigh in favor of this Court retaining jurisdiction and are addressed *seriatim*.

### i.    The Assumption of Jurisdiction By Either Court Over Any Res or Property

Prior to the filing of this action, the Fund was located within the Southern District of New York in Citibank Account No. 009977643705, titled "Lowey Dannenberg Bemporad & Selinger P.C. as Attorneys for the Rezulin Settlement Fund." Cplt, ¶ 1. On January 24, 2008, this Court granted Plaintiff's request to deposit the Fund with the Clerk of the Court. On January 25, 2008, Plaintiff deposited the entirety of the Fund ($4,560,588.47) with the Clerk of the Court.

Accordingly, this Court has exclusive jurisdiction to determine the rights of the various claimants to the Fund. In *F.D.I.C. v. Four Star Holding, Co.*, 178 F.3d at 102, the Second Circuit held that assumption of jurisdiction over the property at issue in the litigation conferred **exclusive** jurisdiction in that Court: "The Supreme Court has recognized that 'in cases where a court has custody of property, that is, proceedings in rem or quasi in rem ... the state or federal

court having custody of such property has exclusive jurisdiction to proceed." *Four Star Holding*, 178 F.3d at 102 (quoting Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579 (1964)).[12] As noted by the Second Circuit in *Four Star Holding*, where the District Court assumes jurisdiction over the property, the first *Colorado River* factor was dispositive, and "the district court thereby had exclusive jurisdiction to proceed." *Four Star Holding*, 178 F.3d at 102.

By contrast, Louisiana has no jurisdiction over Lowey Dannenberg, over most other Defendant claimants to the Fund, or over the Fund itself.

### ii.    The Inconvenience of the Federal Forum

This forum is not inconvenient to any party. The Dugan Defendants **chose** to appear in *Rezulin* litigation in this Court and all parties besides the Dugan Defendants have explicitly consented to the jurisdiction of this Court. The Dugan Defendants have not contested the jurisdiction of this Court (nor could they), nor have they asserted that this is an inconvenient forum. Indeed, on July 17, 2007, they specifically requested that the Fund be deposited in the registry of this Court to be presided over by Judge Kaplan. *See* Exhibit 6.

### iii.    The Avoidance of Piecemeal Litigation

Adjudication of the merits of the adverse parties' claims to the Fund in this Court is the **only** mechanism to avoid piecemeal litigation, which is an essential purpose of 28 U.S.C. § 1335. *Crawford*, 559 F. Supp. at 1362. All the parties are subject to the jurisdiction of this Court, while Plaintiff and multiple Defendants are not subject to, nor do they consent to the jurisdiction of the Louisiana state court. Moreover, adjudication of all claims in this forum avoids the

---

[12]    The Dugan Defendants acknowledge that this is an *in rem* action. *See* Exhibit 13 ("this *in rem* action concerns the settlement of a Rezulin case.")

possibility of other litigation in the multiple states where the other various Defendant claimants
to the Fund reside.

### iv.    The Order in which Jurisdiction was Obtained

While the Louisiana Action was filed first, the majority of Defendants were not parties,
and the Fund was never within that court's jurisdiction.  As stated above, all Defendants besides
the Dugan Defendants have consented to the jurisdiction of this Court, while the majority of
Defendants herein were not even named as parties to the Louisiana lawsuit, and all but one of
them asserts they are not subject to the jurisdiction of the Louisiana state court, but all consent to
the jurisdiction of this Court.  Therefore, while this Court has obtained jurisdiction over all the
relevant parties and the Fund itself, the Louisiana state court has yet to, and in fact cannot, obtain
jurisdiction over all the relevant parties.

### v.    Whether State or Federal Law Supplies the Rule of Decision

Plaintiff filed an *in rem* action in the nature of a statutory interpleader pursuant to 28
U.S.C. § 1335 that among other things seeks, pursuant to 28 U.S.C. § 2361, that the Dugan
Defendants be permanently restrained from instituting, prosecuting, or continuing to prosecute
any proceeding in any other state or United States court, including *Dugan, et al. v. Murphy, et al.*,
(filed July 18, 2007), affecting the Fund until further order of this Court.  This determination
requires the application of federal law.  As to the division of the Fund, New York law will apply
because the Settlement was negotiated and entered into in New York, the Fund was created in
New York, and all of the underlying Rezulin Litigation took place in this Court and the Second
Circuit Court of Appeals, both of which are in New York.  This Court routinely applies New
York law.

### vi. Whether the State Court Proceeding Will Adequately Protect the Rights of the Party Seeking to Invoke Federal Jurisdiction

Adjudication of this action in Louisiana state court will not adequately protect Plaintiff's (or most Defendants') rights, and, to the contrary, will subject Lowey Dannenberg to irreparable harm. *Charleston Library Soc.*, 114 F. Supp. 2d at 262. If the Dugan Defendants are allowed to continue prosecution of the Louisiana Action, Lowey Dannenberg will be subject to litigation in multiple *fora*, without resolution of the claims of all of the parties to their respective shares of the Fund. The Dugan Defendants failed to name multiple other parties with an interest in the Fund as defendants in the Louisiana Action (by comparison, they are all defendants to this action), and a Louisiana State Court would not have jurisdiction over those other parties even if they were named. Under the provisions of 28 U.S.C. § 1335, Lowey Dannenberg is entitled to join all persons asserting claims against the Fund in a single proceeding so that Lowey Dannenberg (and Defendants) may avoid duplicative litigation and the possibility of multiple or inconsistent liability on the conflicting and adverse claims of Plaintiff and Defendants to the Fund.

Based on the foregoing, there is nothing in the Complaint or in the record that warrants the Court exercising the "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Frequency, LLC v. Clear Channel Broadcasting, Inc.*, No. 070 Civ. 7785, 2007 WL 4055984, at *2 (S.D.N.Y. Nov. 15, 2007).

## II. THE COURT SHOULD ORDER A PRELIMINARY AND PERMANENT INJUNCTION AGAINST COMPETING LITIGATION

### A. A Preliminary and Permanent Injunction Are Essential to Avoid Duplicative Litigation and Multiple Inconsistent Liability Resulting from Conflicting and Adverse Claims to the Fund

In the Second Circuit, "[a] party seeking a preliminary injunction must establish that 1)

absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999) (citation omitted).[13]

Here, injunctive relief is essential to prevent the Dugan Defendants from prosecuting the Louisiana Action and to allow all parties claiming an interest in the Fund to litigate their claims in the only forum which has jurisdiction over all of parties and the Fund.[14]

## B.    Irreparable Harm Will Result If No Injunction Is Entered

Lowey Dannenberg is subject to irreparable harm. *See, e.g., Charleston Library Soc.*, 114 F. Supp. 2d at 262. If the Dugan Defendants are allowed to continue prosecution of the Louisiana Action, Lowey Dannenberg will be subject to litigation in multiple fora, including all of the other states in which the other Defendants reside. In *Charleston Library Soc.*, this Court held that "there is little doubt that [Plaintiff] is threatened with irreparable injury in that it is subject to litigation in two fora." 114 F. Supp. 2d at 262. Lowey Dannenberg would suffer a

---

[13]     *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240 (S.D.N.Y. 2004) (citation omitted) (The standard for a permanent injunction is "essentially the same as for a preliminary injunction except that the plaintiff must actually succeed on the merits.")

[14]     Because pursuant to Federal Rule of Civil Procedure 65(a)(2) "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial," a court may grant permanent relief upon a hearing for a preliminary injunction if no genuine issues of facts are present. *Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957).

similar irreparable harm.

### C.     Plaintiff Has a Reasonable Likelihood of Success on the Merits

Where irreparable harm would result absent interpleader, injunctive relief is warranted

when the plaintiff has a reasonable likelihood of success on the merits. *North Atlantic*

*Instrument, Inc.*, 188 F.3d at 43.  Under 28 U.S.C. § 1335, Lowey Dannenberg is entitled to join

all persons asserting claims against the Fund in a single proceeding so that Lowey Dannenberg

may avoid duplicative litigation and multiple liability.  Moreover, 28 U.S.C. § 2361 empowers

district courts to restrain claimants in a situation such as this from instituting or prosecuting any

proceeding in any other court affecting the property at issue.  *Charleston Library Soc.*, 114 F.

Supp. 2d at 262; *see also Crawford*, 559 F. Supp. at 1362 ("injunctive relief in an interpleader

action is "especially proper" when there are numerous claimants and where such relief would

prevent a multiplicity of lawsuits." (citing *United States v. Major Oil Corp.,* 583 F.2d 1152, 1157

(10th Cir.1978))).

Here, the Plaintiff and twelve different Defendants have asserted claims to the Fund.  The

parties are located in New York, Louisiana, Kentucky, California, Alabama, Michigan, and

Connecticut.  The <u>only</u> court to which <u>all</u> parties are subject to jurisdiction is this Court.

Without the issuance of a preliminary and permanent injunction, Plaintiff will face

multiple litigations across the country in the above listed states in order to determine all parties'

rights to the Fund.  Due to the liberal construction of 28 U.S.C. 1335, the explicit power of the

court to issue the requested relied pursuant to 28 U.S.C. § 2361, and the fact that "injunctive

relief in an interpleader action is '**especially proper**' when there are numerous claimants and

where such relief would prevent multiplicity of lawsuits," the Plaintiff has a reasonable

likelihood of success on the merits.  *Crawford*, 559 F. Supp. at 1362 (emphasis added).

### D.    The Balance Of Hardships Tip Decidedly In Favor Of Plaintiff

The Dugan Defendants will suffer no measurable harm should this Court grant a

preliminary and permanent injunction.   The balance of hardships weighs strongly in favor of

Plaintiff and the relief sought.  Plaintiff commenced this action as account holder for and

claimant in the Fund, because it could not safely determine all of the various claims to the Fund

by the Defendants and itself without great hazard and possible multiple liability and could not

determine how much of the Fund it should pay to which of said Defendants or itself.  Plaintiff is

simply seeking to have all claims to the Fund settled in the one forum that has jurisdiction over

all interested parties so that it can avoid duplicative litigation and multiple liability.  As such, the

balance of hardships tips decidedly in favor of Plaintiff.

The Dugan Defendants will suffer no hardship from the relief sought, as the Dugan

Defendants will have a full and fair opportunity to make their cases for their claims to the Fund

in front of this Court and have previously demanded precisely the relief sought by Plaintiff's

motion, *i.e.*, that the Fund be deposited in, and the parties' rights be adjudicated by, this Court.

### E.    The Dugan Defendants' Arguments in Opposition to an Injunction Against Competing Litigation Are Without Merit

The Dugan Defendants' arguments in opposition to an injunction against competing

litigation are equally meritless.  They ask the Court to defer to the Louisiana state court action,

citing a "first to file rule" which only applies to cases which are filed in federal courts, not those

commenced in separate jurisdictions.  Section 2631 of Title 28 of the United States Code

expressly contemplates "second-to-file" interpleader actions taking precedence over competing

state court litigation.  They cite the Anti-Injunction Act as a bar to the injunction, notwithstanding that a separate federal statute (28 U.S.C. § 2631) expressly permits such an injunction.  And finally, they complain that Plaintiffs have "unclean hands" due to its responsible efforts to place this dispute before one court that can properly adjudicate it in a manner fully dispositive of all parties' claims.

### F.    Plaintiff and Multiple Defendants Are Not Subject to the Jurisdiction of the Louisiana State Court

The Dugan Defendants argue that Plaintiff and the other defendants in the Louisiana state court action are all subject to personal jurisdiction of the Louisiana state court.  The Dugan Defendants are incorrect.

Both the United States Supreme Court and the Louisiana Supreme Court have recognized the distinction between "general" and "specific" jurisdiction.  When a state court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state court is exercising "specific jurisdiction" over the defendant.  But when a state court exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state court is exercising "general jurisdiction" over the defendant. *Fox v. Board of Supervisors of Louisiana State University*, 576 So. 2d 978 (La. 1991)(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).  The Dugan Defendants claim that their co-defendants are subject to the personal jurisdiction of the New Orleans court under principles of general jurisdiction. *Dugan Brf.* at 11-12.

"[D]ue process requires that the defendant engage in **continuous and systematic** conduct to support the exercise of general jurisdiction." *Cantuba v. American Bureau of Shipping*, 709

So. 2d 263, 265 (La. Ct. App. 1998) (citing *Helicopteros, supra*) (emphasis added). The Dugan

Defendants contend that Lowey Dannenberg's name appeared on the PACER system for the

United States District Court for the Eastern District of Louisiana for four cases, all of which were

initiated **more than 15 years ago**.[15] This showing falls woefully short of alleging "continuous

and systematic" contacts with Louisiana. *See Bosarge v. Master Mike, Inc.*, 669 So.2d 510 (La.

Ct. App. 1996) *writ denied,*, 669 So.2d 1214 (La. 1996) (half-dozen contacts with Louisiana,

over four-year period, were not sufficient to establish general personal jurisdiction); *Dedeaux v.*

*Dymond*, 792 So. 2d 938 (La. Ct. App. 4 2001) (attorney admitted to practice only in Mississippi,

that practices law primarily outside of Louisiana, and that does not maintain an office in the state

of Louisiana is not subject to the general jurisdiction of Louisiana); *see also Austad Co. v. Pennie*

*& Edmonds*, 823 F.2d 223 (8th Cir. 1987) (law firm did not have minimum contacts with South

Dakota through representation of South Dakota company in litigation pending in federal court in

Maryland).

The Dugan Defendants also set forth no facts to support the general jurisdiction of the

Louisiana Court over Mark Fischer, George Rawlings or Rawlings & Associates. Both Fischer

and Rawlings are citizens of the state of Kentucky and do not have continuous or systematic

contact with the state of Louisiana that would subject them to general jurisdiction, and the Dugan

Defendants fail to even allege any contacts between Rawlings & Associates and the state of

Louisiana.[16] The only evidence before the Court weighs against a finding of general jurisdiction

---

[15]     In fact, these four numbered cases were consolidated cases in one MDL
proceeding – *In re Taxable Municipal Bonds Securities Litigation*, Master File No. MDL 863
(E.D. La. 1995). All of the cases have been closed for more than 10 years.

[16]     Cohen Decl., Ex. 17, 19.

of Louisiana over Fischer, Rawlings and Rawlings & Associates.

Furthermore, in addition to incorrectly alleging that the Louisiana state court has jurisdiction over all parties to the Louisiana Action, the Dugan Defendants also incorrectly allege that all of the other Defendants named in this action would be subject to the personal jurisdiction of Louisiana.  To support their assertion that Wallace Jordan is subject to personal jurisdiction, the Dugan Defendants cite to Wallace & Jordan's appearance on the PACER docket sheet in the Eastern District of Louisiana in a single case filed in 2005.  Similarly, for Elwood Simon & Associates, the Dugan Defendants cite to cases initiated more than 15 years ago.  These contacts are insufficient to confer the general jurisdiction of Louisiana courts over these Defendants.

None of the other non-Louisiana Defendants is willing to voluntarily submit to the jurisdiction of Louisiana, but every one of them has consented to the jurisdiction of this Court.[17]

## III.  THE ANTI-INJUNCTION ACT DOES NOT PRECLUDE THIS COURT FROM ENJOINING THE LOUISIANA ACTION

The Dugan Defendants' argument that the Anti-Injunction Act prevents this Court from enjoining the Louisiana Action is frivolous.  The Anti-Injunction Act provides that "a court of the United States may not grant an injunction to stay proceedings in a State Court **except as expressly authorized by Act of Congress**, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283 (emphasis added).  Here, an Act of Congress, specifically 28 U.S.C. § 2361, expressly authorizes this Court to issue such an injunction.  *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 640 (1973); *Charleston Library Soc.,*

---

[17]     Cohen Decl., Ex. 14-17, 19, 20.

114 F. Supp. 2d at 261 n.3 ("[t]he Anti-Injunction Statute is no obstacle to an injunction restraining a state proceeding in aid of a federal interpleader action") (citation omitted).

## IV. PLAINTIFF DOES NOT HAVE UNCLEAN HANDS; RATHER, THE DUGAN DEFENDANTS DO

Plaintiff acted responsibly by filing this interpleader action. It is the Dugan Defendants that come before this Court with unclean hands. The Dugan Defendants tried to **block** dismissal of the appeal in order to prevent the Settlement from occurring, which, if successful, would have prevented the creation of the Fund, the same Fund from which they are now seeking fees.

The Dugan Defendants assert that Plaintiff has unclean hands because (1) Plaintiff has refused to provide an accounting of the Funds deposited with the Clerk of the Court or identify those entitled to the Funds; (2) has not deposited with the Court the full amount in dispute; (3) is attempting to limit its civil liability in the Dugan action; (4) never sought to deposit the funds in any other court, despite ample opportunity to do so; and (5) has itself only filed duplicative litigation after the Dugan action was remanded. None of these assertions establish "unclean hands."

First, Plaintiff _has_ provided an accounting of the Fund demonstrating that the Fund deposited in the registry of the Court constitutes 100% of the pot of attorneys' fees and expenses generated by the Settlement. Moreover, Plaintiff has identified all of the parties claiming an interest in the Fund, to wit, the Plaintiff and all Defendants.

Second, Plaintiff has deposited with the Court the entirety of the Fund on January 25, 2008.

Third, Plaintiff admits that it is attempting to limit its civil liability in the Dugan action.

There is nothing unclean about that – that's the very purpose of the interpleader statute. Unlike the Dugan Defendants, Plaintiff is trying to get the claims of <u>all</u> interested parties before the <u>only</u> Court with jurisdiction to fully adjudicate the dispute.[18] Plaintiff's hands in this regard are sparkling, while the Dugan Defendants' smell of the efforts to seek an improper home field advantage.

Fourth, Plaintiff did not delay depositing the funds, but rather was precluded from doing so by virtue of the fact that when the Dugan action was transferred to this Court, the entire action was stayed by Order entered September 12, 2007. [Cohen Decl., Ex. 11] The settlement proceeds were not received by Lowey Dannenberg until September 14, 2007, two days after the stay was issued. [Cohen Decl., Ex. 3].

Fifth, Plaintiff filed this action to ensure that the rights of <u>all</u> claimants to the Fund could assert their respective claims the one tribunal that had jurisdiction over all of their claims and the

---

[18]    The Dugan Defendants' unclean hands cases are readily distinguishable. In *Farmer's Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229 (10th Cir. 1988), the interpleader plaintiff, which conceded it was "absolutely liable" for all damage caused by water escaping from its reservoir, with estimates as high as $170,000,000, could not file action for interpleader and tender into registry of court approximately $2,500, which purportedly represented all of its assets, ask that such sum be prorated among the numerous claimants, and then be discharged from any further liability for damages arising out of the flood. That is hardly analogous to the situation at bar, involving competing claimants to a finite pot of attorneys fees arising out of a settlement of litigation. Similarly, *Network Solution, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858 (D. Colo. 1996) is inapposite, because the Second Circuit has held that a defendant's claims may be asserted in a statutory interpleader action. *See New York Life*, 700 F.2d at 96. Finally, *United Artists Corporation v. Fields Productions, Inc.*, 363 F. Supp. 903 (S.D.N.Y. 1973) is of no moment. Unlike *United Artists*, in which certain parties asserted claims for specific amounts under specific contractual provisions far in excess of the amount interpleaded, here there is no ambiguity in the amount at issue. *See Cplt.*, ¶ 7. Moreover, the interpleader plaintiff in *United Artists* was guilty of laches, having waited four years after the first action had been filed.

Fund itself, hardly the nefarious purpose the Dugan Defendants ascribe to Plaintiff.

The Dugan Defendants' attempt to characterize this as an unusual case because "Plaintiff is not merely a disinterested stakeholder" is unavailing. *See* Def. Mem. at 18. The Supreme Court has recognized that a statutory interpleader action is available to Plaintiffs with an interest in the fund. *State Farm Fire & Cas. v. Tashire.*, 386 U.S. 523, 532(1967); *see also, Am. Int'l Speciality Lines Ins. Co., v. Nat'l Ass'n of Business Owners and Professionals*, 253 F. Supp. 2d 468, 476 (E.D.N.Y. 2003) ("In a proceeding in the nature of interpleader, the stakeholder claims an interest in the stake . . . [she] is not discharged after the first stage of interpleader. Under either rule or statutory interpleader, the stakeholder remains a party along with the other claimants, and litigates its claim in the second stage") (quoting Moore's Federal Practice § 22.03[2][b]).

## V.    PLAINTIFF'S *IN REM* INTERPLEADER ACTION WAS NOT A COMPULSORY COUNTERCLAIM IN THE *DUGAN v. MURPHY* ACTION

The Dugan Defendants contend that Plaintiff's interpleader action is barred because it failed to plead interpleader as a counterclaim in *Dugan v. Murphy* when it answered that Complaint, while the case was pending in the United States District Court for the Eastern District of Louisiana. *Dugan Brf.* at 12-13. The Dugan Defendants' argument is meritless as Plaintiff did not have possession of any settlement funds until September 14, 2007, nearly a month after it filed and served its Answer on August 17, 2007. Cplt, ¶ 3.

Rule 13(a) of the Federal Rules of Civil Procedure governs compulsory counterclaims and states that "[a] pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against an opposing party . . . ." Fed. R. Civ. P. 13(a) (as effective

on August 17, 2007) (emphasis supplied).

Lowey Dannenberg and its co-defendants in the *Dugan v. Murphy* Action served its

Answer on the Dugan Defendants in that case on August 17, 2007.[19] At that time, Lowey

Dannenberg did not have "custody or possession [of any] money or property of the value of $500

or more" as required for statutory interpleader under 28 U.S.C. § 1335(a). The first wire with

Settlement proceeds was received by Plaintiff on September 14, 2007. Cplt, ¶ 3. Because

Lowey Dannenberg did not have possession of any funds to which there were adverse claims at

the time it filed its Answer in the *Dugan v. Murphy* Action, this interpleader action could not

have been filed and was not a compulsory counterclaim under Fed. R. Civ. P. 13(a).[20] *E.g., In re*

*Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 330-32 (5th Cir. 2007) (claim of security interest in

moveables not mature prior to payment of proceeds of bankruptcy sale and, thus, not a Rule 13

compulsory counterclaim); *Fabricant v. Sears, Roebuck*, 202 F.R.D. 306, 309 (S.D. Fla. 2001).[21]

Moreover, the Dugan Defendants assert the *Dugan v. Murphy* Action is separate and

distinct from this action. Specifically, the Dugan Defendants asserted that the actions are

---

[19]    Cohen Decl., Ex. 3.

[20]    Plaintiff could not have sought permission to amend its Answer to assert the interpleader claim under Fed. R. Civ. P. 13(e) when it received the partial distribution under the settlement on September 13, 2007 as Judge Fallon entered an Order on September 12, 2007 staying the action pending the ruling of the Judicial Panel on Multidistrict Litigation on its motion to transfer the *Dugan v. Murphy* Action to this Court. Cohen Decl., Ex. 11.

[21]    *Reines Distributors, Inc. v. Admiral Corp.*, 182 F. Supp. 226 (S.D.N.Y. 1960), cited by the Dugan Defendants for the proposition that this Court cannot enjoin the Louisiana Action because Plaintiff should have filed a compulsory counterclaim, is irrelevant to this Court's authority to issue an injunction in this action, as *Reines* concerned the "necessary in aid of jurisdiction" language of 28 U.S.C. § 2283 (the Anti-Injunction Act), which is not applicable to the present case, because in this case the Court is expressly authorized by Congress to issue an injunction pursuant to 28 U.S.C. § 2361. *See* Section III *supra*.

"separate and distinct" because the Dugan action is an *in personam* action for breach of a joint venture agreement, but that "this *in rem* action concerns the settlement of a Rezulin case."[22]  That is flatly inconsistent with the Dugan Defendants' assertion that Plaintiff should have been required to assert its claims as a compulsory counterclaim in Louisiana.  Moreover, a counterclaim for interpleader is distinguishable from an original action of interpleader under 28 U.S.C. § 1335 insofar as the later action may be served on all defendants under 28 U.S.C. § 2361, while the former action may not.  *Metropolitan Life Ins. Co. v. Chase*, 294 F.2d 500, 502 (3d Cir. 1961).  Hence, an interpleader counterclaim, even if available, would not have cured the jurisdictional ills of the *Dugan v. Murphy* Action.[23]

Finally, Plaintiff could not be found to have waived its right to bring a counterclaim in the *Dugan v. Murphy* Action as its time to file such a claim in Louisiana state court has not yet passed.[24]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court hold that Plaintiff has

---

[22]    Cohen Decl., Ex. 13.

[23]    This Court found that it did not have subject matter jurisdiction over the *Dugan v. Murphy* Action.  *See In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, Pretrial Order No. 445 (January 16, 2008).  Even if this federal interpleader action could have been pled as a compulsory counterclaim, the result would have been the same.  *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830-31 (2002) (compulsory federal counterclaim cannot be the basis of "arising under" subject matter jurisdiction).

[24]*Dugan Br. at 13-14 n.4; See also Nippert v. Baton Rouge Railcar Services, Inc.*, 526 So.2d 824, 826 (La. Ct. App. 1 Cir. 1988) ("The claim of res judicata, however, seems to be largely based on the argument that Nippert's action would have been a compulsory counterclaim in the suit to recover the amount due for repairs.  There are no compulsory counterclaims in Louisiana, and it is specious to suggest that Louisiana courts should follow the rules of the federal courts.")

met the requirements for maintenance of a statutory interpleader action, grant Plaintiff's request

for a preliminary or permanent injunctive relief and deny the Dugan Defendants' motion to

dismiss.

Dated:          January 28, 2008
                White Plains, New York


                              LOWEY DANNENBERG COHEN, P.C.


                                   /S/
                              _____
                              Richard W. Cohen (RC-5220)
                              Peter D. St. Phillip (PS-0726)
                              Thomas Skelton (TS-7908)
                              Todd S. Garber (TG-4620)
                              One North Broadway, Suite 509
                              White Plains, NY 10601
                              Telephone:  (914) 997-0500
                              Telecopier: (914) 997-0035

## <u>CERTIFICATE OF SERVICE</u>

I, Todd S. Garber, hereby certify under penalty of perjury that on January 28, 2008, I caused to be electronically filed the foregoing Plaintiff's Consolidated Reply Memorandum of Law (1) In Further Support of its Motion for a Preliminary and Permanent Injunction and (2) In Opposition to Defendants James R. Dugan, II's and Stephen B. Murray, d/b/a/ The Murrary Law Firm's Motion to Dismiss the Complaint  using the CM/ECF system which will send notification of such filing to registered counsel electronically.  A true and correct copy of the foregoing was sent via email to any party or counsel not receiving electronic service from the CM/ECF on this 28th day of January 2008.

/S/
Todd S. Garber