IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LOWEY DANNENBERG COHEN, P.C., in its
capacity as account holder of, and party with
interest in, the REZULIN SETTLEMENT FUND,

                    Plaintiff,

           - vs -

JAMES R. DUGAN, II, STEPHEN B. MURRAY
d/b/a THE MURRAY LAW FIRM, RAWLINGS
AND ASSOCIATES, PLLC, GREG MURPHY,
MORAIN & MURPHY, LLC, WALLACE
JORDAN RATLIFF & BRANDT, LLC,
ELWOOD S. SIMON & ASSOCIATES, P.C.,
KERSHAW, CUTTER & RATINOFF, LLP,
BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO, MARK FISCHER, GEORGE
RAWLINGS, SHIPMAN & GOODWIN LLP,

                    Defendants.

Case No. 08 Civ. 0461 (LAK)

**ECF CASE**

## DECLARATION OF THOMAS M. SKELTON

      I, THOMAS M. SKELTON, declare under the penalty of perjury pursuant to 28 U.S.C.

§ 1746, that:

      1.      I am an attorney admitted to practice in New York and before this Court, and am a

shareholder of Lowey Dannenberg Cohen & Hart, P.C., counsel *pro se* for Plaintiff Lowey

Dannenberg Cohen, P.C., in its capacity as account holder of, and party with interest in, the

Rezulin Settlement Fund (the "Fund") and I am familiar with all the facts and circumstances in

this action.

      2.      On January 31, 2008, this Court held a hearing on Plaintiff's motion for a

preliminary and permanent injunction at which the Dugan Defendants appeared through counsel

(Dane Ciolino) and participated in oral argument. A true and correct copy of the Transcript from the January 31, 2008 hearing is annexed hereto as Exhibit 1.

3.      Since January 31, 2008, I have been the sole contact at Lowey Dannenberg for communications with Mr. Ciolino on this matter.

4.      After the hearing on January 31, 2008, the next communication between Plaintiff and the Dugan Defendants occurred on February 7, 2008, when Plaintiff served very targeted discovery requests on the Dugan Defendants, and proposed that the parties agree to exchange Rule 26(a) disclosures by email on February 20, and responsive documents by email on February 20.

5.      The Dugan Defendants did not respond to my February 7th letter.

6.      Eight days later, on February 15, 2008, I called Mr. Ciolino and left him a voice mail message to follow up on my February 7, 2008 proposal.

7.      Five days later, on February 20, 2008 (after receiving a copy of a stipulation Plaintiff entered into with other defendants), Mr. Ciolino finally returned my call, but stonewalled me. Mr. Ciolino recognized the need to move promptly with discovery due to the March 31, 2008 discovery cut-off, but told me that he would need more time to discuss the matter with his clients and was unable to commit to a proposed schedule at that time.

8.      Between January 31, 2008 and the filing of Plaintiff's default motion on February 27, 2008, there were no other contacts between Lowey Dannenberg and counsel for the Dugan Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:          March 7th, 2008
                White Plains, New York

THOMAS M. SKELTON

81v2Iowa

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   -------------------------------x

 3   LOWEY DANNENBERG COHEN, PC,

 4                   Plaintiff,              New York, N.Y.

 5              v.                           08 Civ. 461(LAK)

 6   JAMES R. DUGAN, II, et al.,

 7                   Defendants.

 8   -------------------------------x

 9                                           January 31, 2008
                                             2:50 p.m.
10
     Before:
11
                     HON. LEWIS A. KAPLAN,
12
                                       District Judge
13

14

15                        APPEARANCES

16   LOWEY DANNENBERG COHEN, P.C.
          Attorneys for Plaintiff
17   BY:  RICHARD W. COHEN
          THOMAS M. SKELTON
18        J. PETER ST. PHILLIP

19

20   DANE S. CIOLINO
          Attorney for Defendants Dugan and Murray

21

22   WALLACE, JORDAN, RATLIFF & BRANDT, LLC
          Attorneys for Defendant Wallace, Jordan, Ratliff & Brandt
23   BY:  MICHAEL J. VELEZIS
          KIM WEST

24

25
```

1

81v2Iowa

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    LOWEY DANNENBERG COHEN, PC,

4              Plaintiff,         New York, N.Y.

5           v.               08 Civ. 461(LAK)

6    JAMES R. DUGAN, II, et al.,

7              Defendants.

8    ------------------------------x

9                             January 31, 2008
                             2:50 p.m.
10

11   Before:

12                 HON. LEWIS A. KAPLAN,

13                          District Judge

14

15                   APPEARANCES

16   LOWEY DANNENBERG COHEN, P.C.
        Attorneys for Plaintiff
17   BY:  RICHARD W. COHEN
        THOMAS M. SKELTON
18       J. PETER ST. PHILLIP

19

20   DANE S. CIOLINO
        Attorney for Defendants Dugan and Murray

21

22   WALLACE, JORDAN, RATLIFF & BRANDT, LLC
        Attorneys for Defendant Wallace, Jordan, Ratliff & Brandt
23   BY:  MICHAEL J. VELEZIS
        KIM WEST

24

25

81v2Iowa

```
 1                    (Case called)
 2              THE DEPUTY CLERK:  Plaintiff, are you ready?
 3              MR. COHEN:  Yes, your Honor.
 4              THE DEPUTY CLERK:  Defendant Wallace Jordan's firm,
 5    are you ready?
 6              MR. VELEZIS:  Yes, your Honor.
 7              MS. WEST:  Yes, your Honor.
 8              THE COURT:  Defendants Dugan and Murray, are you
 9    ready?
10              MR. CIOLINO:  Yes.
11              THE COURT:  Mr. Skelton, is it?  Who is for the
12    movant?
13              MR. COHEN:  Mr. Cohen, Richard Cohen.
14              THE COURT:  Mr. Cohen.
15              MR. COHEN:  Thank you, your Honor.
16              Your Honor, before I begin argument, just a couple of
17    preliminary matters.  On request of defendants Wallace Jordan,
18    we move their admission pro hac vice.  We hope that the court
19    would agree that --
20              THE COURT:  I will hear them, but they have to make
21    the motion on papers and pay the fee.
22              MR. COHEN:  We did.  We submitted the papers in the
23    Clerk's Office and paid the fee.
24              THE COURT:  Then it will go to the Part I judge, but I
25    will hear them.
```

81v2lowa

1          MR. COHEN:  Thank you, your Honor.

2          Secondly, we wanted to hand up an additional piece of

3    evidence which we gave to Mr. Ciolino before the argument, and

4    he has consented.  It is a letter that he sent to counsel which

5    represented us in the Louisiana action which we believe is

6    relevant to the proceedings.

7          THE COURT:  Okay.  Hand it up.

8          MR. CIOLINO:  No objection, your Honor.

9          THE COURT:  Go ahead.  Do it.

10          MR. COHEN:  Thank you, your Honor.

11          THE COURT:  Mr. Cohen.

12          MR. COHEN:  Yes, I just lost my legal pad, if you give

13    me second.

14          THE COURT:  That's okay.  My secretary just brought

15    mine down.

16          MR. COHEN:  Found it.

17          Your Honor, before the court today are the Dugan

18    defendants' motion to dismiss.  As to that, Mr. Ciolino and I

19    spoke before argument, and I believe Mr. Ciolino has agreed

20    that that is now moot by virtue of our having deposited the

21    fund with the court.

22          THE COURT:  Is that right, Mr. Ciolino?

23          MR. CIOLINO:  Your Honor, I believe it is moot because

24    they filed an amended complaint that cured many of the problems

25    that we raised with the original complaint.  Our time for

81v2Iowa

1    filing a responsive pleadings I think runs until February 18.

2    At that point we will evaluate whether to file a motion to

3    dismiss the amended complaint.  But as to the original

4    complaint, I agree with Mr. Cohen that it is moot.

5         THE COURT:  All right.  The motion to dismiss the

6    original complaint is denied as moot.

7         MR. CIOLINO:  Thank you.

8         MR. COHEN:  So, your Honor, we are here now on a

9    motion for an injunction pursuant to 28 U.S.C. 2361, which is

10   the enforcement mechanism to prevent competing litigation in an

11   instance where the court has proper interpleader jurisdiction.

12        THE COURT:  From your point of view, is this statutory

13   interpleader alone or rule and statutory interpleader?

14        MR. COHEN:  It is statutory interpleader alone, your

15   Honor.

16        THE COURT:  Why is that?

17        MR. COHEN:  That is how we pleaded it.  I am certainly

18   willing to be educated, but. . .

19        THE COURT:  Rule 22 says that where you have, I think

20   it says where you have at least $75,000 in controversy and a

21   risk of multiple liability, you can pursue interpleader under

22   the rule.  Among the differences are two:  One is you don't

23   have to deposit the money, and the second is that the standard

24   by which diversity of citizenship is assessed is different than

25   it is under the statute.  So I was just curious.

81v2Iowa

1          MR. COHEN:  We pleaded it under the federal statute to

2    gain advantage certainly of the minimal diversity requirements.

3    Even though we are diverse from every defendant, we believe,

4    you never know.

5          THE COURT:  So then on the face of the complaint, you

6    satisfied the diversity requirement for rule interpleader also,

7    as I understand it.

8          MR. COHEN:  And nobody has contested that, your Honor.

9          THE COURT:  All right.

10         MR. COHEN:  The reasons for granting the injunction

11   are those that are present in virtually every 28 U.S.C. 1335

12   case, and we are asking today for a preliminary and permanent

13   injunction because we argue that we have satisfied clearly the

14   requirements of 1335.  They are established by the documents

15   annexed to the declarations we have submitted in the verified

16   complaint.  We have shown that there is a finite pot of money

17   that represents the fees generated by the settlement of the --

18         THE COURT:  I wanted to focus on that for a minute.

19         I know your papers say somewhere that under the plan

20   of allocation, four and a half million dollars was earmarked as

21   the fees, and that's what went into the account, which then

22   grew modestly through interest.

23         But is the plan of allocation anywhere in the record?

24         MR. COHEN:  It is not, your Honor.  We have that.  It

25   is in privileged communications which we would submit to the

81v2lowa

1    court.  We would prefer that it be submitted *in camera* because

2    it was in the form of two advisory memoranda to all of the

3    clients explaining all of the terms of the settlement.  We do

4    have with us redacted versions of those two memoranda, which

5    just show the plan of allocation -- the date of the memoranda,

6    who sent it, to whom it was sent, the headings, and then the

7    plan of allocation, which shows that in fact it was $4,450,000

8    that was allocated to attorneys' fees.  There was $275,000

9    allocated to each of the two litigating insurers -- that was

10   Louisiana Blue Cross and Eastern States Health and Welfare

11   Plan.  That came out of the $5 million pot, leaving $4,450,000

12   allocated to attorneys' fees, and that was explained to every

13   client as a plan of allocation, which was assented to by all of

14   them.

15           THE COURT:  All right.  Go ahead.

16           MR. COHEN:  That money has never been touched.  It

17   remained in our account until we deposited it with the court.

18   We have not taken a penny.

19           So there is a finite pot that is available for the

20   fees for the nine law firms to claim against, which reside in

21   eight different states.  We are already subject to litigation

22   in one state court.  It is a leak that can spring in two,

23   three, four, five, six, seven, eight, although the standard is

24   such that multiple fora is satisfied by litigation in two

25   courts.  We are certainly subject to the risk of multiple

81v2Iowa

1    litigation.

2         And that's all there is, Judge.  There is the 4.5

3    million that's sitting in the court.  That's the only source to

4    pay these fees.  Nine firms have claims against it.  They all

5    should have their *quantum meruit* assessment against it.  I

6    don't have more fees to give Mr. Dugan or two other claimants.

7         I am not proud to be here today, having a fee dispute

8    in front of a federal district judge.  It is not anything I

9    have done in 28 years of practice.  It's something I hope never

10   to do again.  I do understand that it is more routine practice

11   in some fora, but it is not what we like to do.  We have always

12   been able to work these out.  But unfortunately this time we

13   couldn't.  We pursued two months before this *res* came into

14   existence.  We deposited it into the court as soon as your

15   Honor determined that the Louisiana action couldn't stay here

16   because you lacked federal subject matter jurisdiction.

17        We have provided the court with that federal subject

18   matter jurisdiction through 28 U.S.C.1335.  The case law,

19   including your Honor's case in the Charleston Library matter,

20   the Western District of New York case of Mitchell, I believe --

21   no, that's your case -- Bank of New York v. Crawford, all those

22   cases recognize the propriety of the injunction to stop there

23   from being competing litigation once the court has assumed

24   litigation over the *res* in an interpleader action.  In fact,

25   the Second Circuit in I think it is the FDIC v. Four Star

81v2Iowa

1  Holding case, 178 F.3d 97, recognized that "the federal court,

2  having custody of property in an *in rem* action, has exclusive

3  jurisdiction to proceed."

4      I would read 2361 the same way, your Honor, in that it

5  says that "in any civil action of interpleader under 1335, such

6  district court shall hear and determine the case."

7      Under *Colorado River*, this court, I'm sorry to put

8  this at your feet, but this court has the unyielding

9  obligation, unflagging obligation to exercise its jurisdiction.

10  So it will be heard here.  It is only destructive to allow

11  competing litigation to go forward in Louisiana which, by the

12  Dugan defendants' own admission, involves this exact *res* and

13  nothing but this *res*.

14      If your Honor looks at Exhibit 5, it is my

15  declaration, which is the Dugan defendants' citation filed in

16  the Louisiana parish court, the preamble of that complaint

17  says, "This is a petition for damages, *quantum meruit*,

18  concursus and injunctive relief relating to legal fees to be

19  allocated in the matter of Louisiana Health v. Warner Lambert,"

20  and then it cites the case number.

21      The petition filed by the Dugan defendants in

22  Louisiana goes on to say, at paragraph 17, and this is Exhibit

23  5 to my declaration, their complaint, "In July 2007, Pfizer and

24  the clients represented by the petitioners reached a tentative

25  settlement of the resident litigation.  This settlement will

81v2lowa

1    result in the division of a substantial legal fee among the

2    lawyers participating in the Rezulin litigation including the

3    parties to this lawsuit."

4              Your Honor, I would argue that that is their admission

5    and recognition that there were other parties with a right to

6    claim in this fund.  We were not named in their petition.  We

7    have taken the step now of bringing all of those parties before

8    this court.  Every one of them has submitted a declaration now

9    assenting to the jurisdiction of this court, not that that is

10   legally necessary if the court has jurisdiction under 1335 and

11   2361, but every one every them also, with the exception of

12   Mr. Murphy, who is down in Baton Rouge, asserts that it or he

13   or she is not subject to the jurisdiction of the Louisiana

14   court, and every one of those declarations asserts a competing

15   claim to the fund.

16             So we have all of the elements of 1335.  So we meet

17   the injunctive standards, your Honor, the irreparable harm that

18   your Honor recognized in the Mitchell case of being subject to

19   competing litigation.

20             We have prevailed on the merits in the sense that it

21   is -- the merits being that it is a proper interpleader, not

22   the merits that we are entitled to this much or the Dugan

23   defendants are entitled to that much, but it is a proper

24   interpleader, adverse claimants with minimal diversity, more

25   than $500 at stake, the *res* deposited with the court.

81v2Iowa

1          Under those circumstances, your Honor, we argue that

2    we are entitled to the injunction.  And we also would add, your

3    Honor, that when we got the TRO, we personally, our law firm,

4    posted a $500,000 bond which, now that the entire *res* of 4.5

5    million that everyone is contesting has been deposited with the

6    court, we would ask your Honor to waive that bond requirement

7    going forward.  There is adequate security for the payment of

8    everybody's claims now, and it is a punishing burden for a

9    small firm like ours --

10          MR. CIOLINO:  We would have no objection to that.

11          THE COURT:  All right.

12          All right.  Anything else?

13          MR. COHEN:  Thank you, your Honor.

14          THE COURT:  All right.  Mr. Ciolino.

15          MR. CIOLINO:  Thank you, your Honor.  Good afternoon.

16          The way the proceedings stand now, I am not sure there

17    is a lot that we disagree on.  We filed our opposition in

18    January, January 23, last week, raising a number of problems

19    with the original complaint.  On Monday, on the 28th, the

20    plaintiffs cured many of the problems that existed with that

21    original complaint.  They have deposited the funds in the

22    registry of the court on January 25.

23          THE COURT:  Lets focus on what, if any, problems

24    remain.

25          MR. CIOLINO:  Again, I think we would agree that now

81v2lowa

1    that the requirements have been met, that this court has

2    subject matter jurisdiction and personal jurisdiction.  But it

3    all really turns on this, your Honor, that although the court

4    does have jurisdiction, since interpleader is an equitable

5    action, the court has the discretion, if it so chooses, not to

6    entertain the matter, even though it has jurisdiction.  And the

7    court, the Second Circuit, in Truck-A-Tune v. Ray, 23 F.3d 60,

8    from 1994, said exactly that.  The availability of jurisdiction

9    in an interpleader matter doesn't necessarily mean that the

10   court has to -- that the equities warrant federal adjudication,

11   to use the Second Circuit's language.

12        So I guess the only issue is should this court take

13   this matter when it could exercise its equitable discretion to

14   decline federal adjudication and, for these reasons, I would

15   submit to your Honor that it is appropriate that you decline as

16   a matter of your equitable discretion to hear this case.

17        This interpleader really is the most recent effort by

18   these plaintiffs just to secure this forum.  They removed the

19   case from the District Court in Louisiana to the Eastern

20   District of Louisiana.  Once it was in the Eastern District of

21   Louisiana, they MDL'ed the case here.

22        This dispute was an ordinary civil action, it's been

23   an ordinary civil action for six months.  There was no need for

24   an interpleader, at least according to what the defendants, now

25   the plaintiffs, filed on August 10, when they removed the case.

81v2Iowa

1    There was no need for interpleader on August 17, when they

2    filed their answer in the Eastern District of Louisiana.  There

3    was no need for interpleader in September, when they sought and

4    obtained the MDL transfer.  The first necessity that they

5    articulated for interpleader was January 17, which happened to

6    be the day after your Honor remanded the case to the Civil

7    District Court in Orleans Parish.

8              The fact is, there is no need for interpleader in this

9    case.  The Dugan defendant --

10             THE COURT:  It seems to me that that chronology is

11   quite supportive of the plaintiff, not you.

12             MR. CIOLINO:  Well --

13             THE COURT:  Because up to that point, the plaintiff

14   had every reason to believe that the matter would be resolved

15   in the MDL right here where we are today.

16             MR. CIOLINO:  Well, as an ordinary civil proceeding,

17   not as this equitable interpleader action.  And, in fact, if

18   there was a problem, if there wasn't everybody before the court

19   necessary for adjudication, we would have heard something under

20   Rule 19 that necessary or indispensable parties weren't joined,

21   but we didn't hear anything of that sort, your Honor, until

22   now.

23             THE COURT:  Rule 19 is not a waivable defect, right?

24             MR. CIOLINO:  You would have expected that they would

25   have raised a Rule 19 problem if that was really an issue.

81v2Iowa

```
 1   What they really want is this forum, and this is a fine forum.
 2           THE COURT:  It certainly makes a certain amount of
 3   sense, don't you think?  I have only had 17 or 1800 cases here,
 4   including the case or cases concerning which the fee dispute
 5   pertains.
 6           MR. CIOLINO:  Absolutely, your Honor, but this is
 7   really just a dispute among lawyers.  It doesn't have anything
 8   to do with the --
 9           THE COURT:  It might have a little something to do
10   with what services were rendered and the quality thereof, don't
11   you think?
12           MR. CIOLINO:  Absolutely it does.
13           THE COURT:  You think the judge in Louisiana is better
14   informed on that than I am?
15           MR. CIOLINO:  Well, no, your Honor.  It is really just
16   a matter of whether or not it is appropriate for your Honor to
17   keep the case.  And if, obviously, your Honor thinks so, then
18   here we are, and we will be prepared to deal with that on the
19   merits at the appropriate time.  We don't object to the
20   continuance of the TRO or the preliminary injunction until your
21   Honor rules on our motion to dismiss, which --
22           THE COURT:  Right now there isn't one.
23           MR. CIOLINO:  No.  Our time for answering or
24   responding to the amended complaint is February 18, and we
25   certainly don't have any problems with continuing TRO and
```

81v2Iowa

1    preliminary injunction until such time as we file that motion

2    to dismiss.  And the motion to dismiss, your Honor, is going to

3    be based entirely on the same argument, that there is, for

4    these reasons, good justification for the court exercising its

5    discretion not to keep the matter.

6           THE COURT:  I always appreciated frankness when I was

7    at the bar on the part of judges, and obviously if you want to

8    make that motion, I am not going to stop you, and I certainly

9    don't foreclose the possibility that your advocacy will be so

10   fabulous that I will be swept off my feet or perhaps learn

11   something I don't know today.  It wouldn't be the first time.

12   But based on what I know today, you might as well save the cost

13   of the ink and the postage.

14          MR. CIOLINO:  I appreciate that judicial frankness,

15   and I guess what we will do is then just figure out when we are

16   going to set this thing for a trial on the merits.

17          THE COURT:  Sounds like it.  Okay.

18          MR. CIOLINO:  Thank you.

19          THE COURT:  Thank you.

20          Anyone else wish to be heard?

21          MR. VELEZIS:  Good afternoon, Judge.  My name is

22   Michael Velezis.  I am a member of and represent the law firm

23   of Wallace, Jordan, Ratliff & Brandt, based out of Birmingham,

24   Alabama.  We stipulate to this court's jurisdiction and we join

25   with the plaintiffs in requesting that you grant the injunction

81v2Iowa

1    and keep this case and help these lawyers resolve this fee

2    dispute.

3         The only thing different I have to add, Judge, is we

4    are -- the Wallace Jordan defendant is different than every

5    other defendant.  No one here has claimed that we are a party

6    of or involved in, in any way, this joint venture.  We are here

7    because Pfizer insisted on one global settlement transaction,

8    and our money, our six clients, the fees we have incurred and

9    earned in representing six clients exclusively is in part of

10   that 4.5 million or whatever the *res* is.  I think I am being

11   truthful in saying that it is undisputed that no one claims

12   that Wallace Jordan was involved in any joint venture or,

13   stated another way, that no one claims that they are entitled

14   to a portion of Wallace Jordan's fees.  I just wanted to bring

15   that up front to the court.

16        Thank you.

17        THE COURT:  Thank you.

18        Anyone else?

19        All right.  I am ready to rule on this now.

20        I have before me in this action for interpleader a

21   motion by the plaintiff for a preliminary injunction which,

22   broadly speaking, wishes to enjoin any other litigation

23   concerning the fund, including, without limitation, an action

24   brought by certain of the defendants in the state court in

25   Louisiana, which I will refer to in my subsequent remarks as

1   "the Louisiana case."  I use that as a term of art.

2          The background is that Warner Lambert and/or Pfizer

3   came to market a number of years ago with an ethical drug

4   indicated for the treatment of diabetes, the trade name of

5   which was Rezulin.  The drug was on the market for a period of

6   time.  There were reports of some problems with what I recall

7   as being a quite small subset of patients who had taken

8.  Rezulin.  The drug was ordered off the market in the

9   United Kingdom.  Pfizer then withdrew the drug from the United

10  States market.

11         The withdrawal of the drug was followed by an

12  avalanche of products liability litigation in both state and

13  federal courts.  The judicial panel on multidistrict litigation

14  consolidated all of the federal cases in this court, ultimately

15  before me, pursuant to 28 U.S.C. 1407.

16         Among the cases that ultimately were consolidated

17  before me for that purpose were two lawsuits that, if memory

18  serves, also originated in Louisiana, one of them brought by --

19  I take that back.  One of them originated in New York.  The one

20  that originated in New York was the Eastern States case, and

21  the one that originated in Louisiana was brought by Louisiana

22  Blue Cross, if memory serves.

23         There were lots of lawyers involved in those cases,

24  as, indeed, there were in the whole MDL.  The course of those

25  cases was somewhat complicated.  I initially granted a motion

1    to dismiss the complaints.  That was appealed to the Court of

2    Appeals.  The Court of Appeals reversed.

3        It came back.  There was discovery.  The allegations

4    on which the Second Circuit relied in reversing the dismissal

5    turned out by and large to have very little basis in fact, and

6    I granted the motion for summary judgment the second time

7    around.  That was appealed.

8        During the pendency of the appeal, a complex global

9    settlement was worked out that involved payment by Pfizer to

10   not only the litigating insurance company plaintiffs, but a

11   large number of others that was, if memory serves me correctly,

12   in the neighborhood of $17 million, the money to be distributed

13   pursuant to a plan of allocation that was not in the original

14   settlement agreement.  It was either in some side agreement or

15   some subsequent agreement.  Suffice it to say that the evidence

16   is, and it is not disputed, that the plaintiff allocation

17   ultimately set aside $4,450,000 for the payment of attorneys'

18   fees.

19        The firm of Lowey Dannenberg, the plaintiff here,

20   which played a prominent role in those insurance company

21   Rezulin cases received the $4.45 million and put it in a

22   segregated account.  In due course, the Dugan and Murray

23   defendants here asserted a claim which, stripped of some

24   verbiage, amounts to a claim to a third of that fund, more or

25   less.  They filed the Louisiana action against Lowey Dannenberg

81v2lowa

1    seeking to recover what they concede to be their share of the

2    attorneys' fees generated by the insurance company settlement.

3          Lowey Dannenberg removed that action to the Federal

4    District Court for the Eastern District of Louisiana.   The

5    multidistrict panel sent it to me as part of the Rezulin MDL.

6          In due course, I granted a motion to remand to the

7    Louisiana State Courts because I concluded that diversity of

8    citizenship was lacking.

9          Almost immediately upon the remand, Lowey Dannenberg

10   brought this action for interpleader against the Dugan and

11   Murray defendants and all other known claimants, actual or

12   possible, to the fund of attorneys' fees in this court and,

13   after some initial skirmishing, deposited not only the

14   $4,450,000, but the interest earned thereon from the time of

15   deposit to the date of deposit into the registry of this court.

16   And they bring this motion for a preliminary injunction to

17   restrain any competing litigation, including the Louisiana

18   case.

19          Now, the standard that governs a motion for a

20   preliminary injunction is very straightforward.   Plaintiff has

21   to show a threat of irreparable injury and either that it is

22   likely to prevail on the merits or, alternatively, that it has

23   raised serious questions that are a fair ground for litigation

24   and that the balance of hardships tips decidedly in its favor.

25          In this case, I find that there is, quite clearly, a

81v2lowa

1    threat of irreparable injury in the absence of a preliminary

2    injunction in that Lowey Dannenberg is subject to the

3    possibility of litigation, indeed, the likelihood of litigation

4    in multiple fora as competing claimants try to get their hands

5    on as much of the $4.5 million fund as they can.

6         A number of arguments were raised in the defendants'

7    motion to dismiss the complaint for interpleader, but the

8    plaintiff amended the complaint, and the defendants have

9    acknowledged, and I appreciate the candor and frankness with

10   which they did so, that the filing of the amended complaint

11   unequivocally moots the motion to dismiss, which I have already

12   denied on that basis, and cures at least most of the defects,

13   perhaps all of the defects that originally generated the motion

14   to dismiss.

15        I should say a word parenthetically about

16   jurisdiction.  The case is framed in the complaint and in the

17   amended complaint as a statutory interpleader.  In a statutory

18   interpleader, the diversity of citizenship requirement is

19   merely that there be at least two claimants to the fund of

20   diverse citizenship, and there quite clearly are more than two

21   claimants to the fund who are of diverse citizenship.

22        I raised also the question of whether the case should

23   be considered under the rubric of rule interpleader and, in

24   fact, although the plaintiff didn't plead the case that way, it

25   seems clear to me that the requirements of rule interpleader

81v2lowa

1    and of subject matter jurisdiction for that purpose also are

2    satisfied.

3        Rule interpleader is appropriate under Rule 22 "where

4    persons have claims against a plaintiff such that the plaintiff

5    is or may be exposed to double or multiple liability." That is

6    surely the case here. The jurisdictional requirement in that

7    circumstance is a little bit different. It requires diversity

8    of citizenship between the plaintiff and each of the

9    defendants. One of the cases so holding is Correspondence

10   Services Corporation against First Equities Corporation of

11   Florida, 338 F.3d 119, 124 (2d Cir. 2003). I find the

12   diversity of citizenship requirement in that regard is

13   satisfied here, as is the requirement that the matter in

14   controversy, exclusive of interest and costs, exceeds $75,000.

15   So subject matter jurisdiction exists in this case regardless

16   of whether this is treated as a statutory interpleader, as

17   initially pled, or as a rule interpleader, which also would be

18   available.

19       The defendants' only argument here today boils down to

20   a contention that it is within the discretion of this court to

21   decline, and at this point I am not quite clear on the

22   argument, but it is to decline either jurisdiction altogether

23   or to decline to issue the injunction because interpleader

24   invokes the court's equitable jurisdiction and the plaintiff is

25   forum shopping. Well, that is a singularly unpersuasive

81v2lowa

1    argument, admirable although it may be for creativity.

2         It is certainly true that the plaintiff did not seek

3    an injunction until after I remanded what began as the

4    Louisiana case to the Louisiana State Court.   But in view of

5    the previous proceedings in that case, there was absolutely no

6    reason for them to do so, because they had every reason to

7    believe and understand that the Louisiana case in fact could be

8    litigated in this court before me.

9         They removed the Louisiana case to the Eastern

10   District of Louisiana.   They sought a stay from Judge Fallon,

11   pending action by the multidistrict panel, on the theory that

12   the case belonged in New York with the Rezulin MDL.   They asked

13   the multidistrict panel to move the case here, the

14   multidistrict panel did so, and so there was just no need to

15   apply for an injunction.

16        Only when I perhaps surprised them, but in any case,

17   surprise or not, remanded the case was there really a serious

18   prospect of litigation in multiple fora, and they moved

19   absolutely as quickly as anyone reasonably could have asked

20   them to move.

21        So even assuming for the sake of argument that it

22   would be appropriate as a matter of law for me to decline

23   either to exercise my jurisdiction in general or to grant a

24   preliminary injunction on the grounds generally asserted by the

25   defendants, this is not a case in which it would be appropriate

81v2Iowa

1    for me to do that.

2            Moreover, as my colloquy with Mr. Ciolino suggested,

3    it is absolutely clear that even if the plaintiff was forum

4    shopping and seeking to get the case to this court, I would

5    observe that not all forum shopping is wrong.  Sometimes it is

6    really downright scurrilous, but in this case it is downright

7    rational and appropriate.

8            The fact of the matter is that, for better or for

9    worse, I have been presiding over the Rezulin matter for years,

10   I presided over all meaningful proceedings in the part of the

11   Rezulin litigation that yielded the fee fund that is at issue

12   in this case.  Without meaning to claim any special brilliance

13   or anything on my part, I am the judge who in fact saw the work

14   product, the value of which presumably will be at issue in

15   allocating the fund.  I have intimate familiarity, like it or

16   not, with all of the ins and outs of the Rezulin litigation,

17   and there is just no question that the interests of judicial

18   economy would be dramatically served by having this dispute

19   resolved before me as opposed to asking one of my state court

20   brethren in Louisiana to master the ins and outs of a

21   litigation which at its peak had well over a thousand cases

22   before me and attempting to sort out of all of that the rights,

23   the wrongs and the values related to the fee claim.

24           So for all those reasons, the motion for a preliminary

25   injunction is granted.

81v2Iowa

```
 1              Furthermore, it is granted without any requirement of
 2     security, because the dispute is over the fund and the fund is
 3     in the registry of the court, so the defendants are not exposed
 4     to any meaningful risk of loss in the event this preliminary
 5     injunction has been wrongfully or erroneously issued.  And the
 6     defendants, again commendably, frankly acknowledge that.  The
 7     temporary restraining order bond is exonerated on consent.
 8              Folks, now I guess all we need to do is to set a
 9     schedule, so I will be happy to hear you on that.
10              MR. COHEN:  Thank you, your Honor.
11              THE COURT:  Oh, and there is one other thing I would
12     ask you, Mr. Cohen, and that is this:  At one point in your
13     remarks you said something about the matter being ripe not only
14     for a preliminary but for a permanent injunction.  That is, in
15     effect, I believe, the substantial equivalent of asking me for
16     summary judgment, isn't it, not as to the allocation of the
17     fund but as to a part of the relief?
18              MR. COHEN:  Correct, your Honor.
19              THE COURT:  Is there an objection on the part of the
20     defendants to the injunction being permanent as to litigation
21     in other forums?  After all, the fact of the matter is that the
22     fund is here, and there will be an adjudication allocating it,
23     and that will be that.  So I don't know what your pleasure is,
24     Mr. Ciolino.
25              MR. CIOLINO:  Your Honor, this is a preliminary
```

81v2Iowa

1    injunction.  It is in effect throughout the pendency of these

2    proceedings, and at the end of proceedings the fund is

3    distributed.  So I don't see any reason why we can't call it a

4    permanent injunction because at the end of the proceedings the

5    *res* is distributed anyway.

6            THE COURT:  Then on that basis, I will make it

7    permanent.  And if for some totally unforeseen reason this

8    lawsuit in other respects ends without an allocation of the

9    fund or an adjudication of the respective rights of the

10   parties, you have the ability to come back under Rule 60 if

11   that's appropriate.

12           Mr. Cohen.

13           MR. COHEN:  Thank you, your Honor.  We did, in the

14   hopes that you would agree to release the security on TRO,

15   prepare a proposed order to that effect, which I would like to

16   hand up.

17           THE COURT:  Sure.

18           MR. COHEN:  Your Honor, I have not conferred with any

19   other counsel on this, but given the limited nature of what we

20   are dealing with, I would propose 60 days as the discovery

21   period.  I don't really see the need for more than that.

22           THE COURT:  Let's get the reaction to this order.  Any

23   problem with this order?

24           MR. CIOLINO:  None at all, your Honor.

25           THE COURT:  All right.

81v2Iowa

1          Okay.  Any need for more than 60 days on discovery?

2          MR. CIOLINO:  No, your Honor.  That would be good.

3          THE COURT:  So discovery cutoff will be March 31,

4     pretrial order, requests to charge, if that's appropriate,

5     proposed jury instructions, if appropriate -- that's what I

6     just said, isn't it -- and summary judgment motions by April

7     30.

8          Has anybody demanded a jury in this case?

9          MR. COHEN:  We have not, your Honor.

10         THE COURT:  Is there going to be --

11         MR. CIOLINO:  Your Honor, we have not even considered

12    it yet.  So I can't speak to that issue at this point.

13         THE COURT:  Think about how some of our citizens here

14    would relish serving on a jury dispute in a fight between

15    prosperous lawyers over $4.5 million.

16         MR. CIOLINO:  Yes, your Honor.

17         THE COURT:  Anything else?

18         MR. COHEN:  Nothing here, your Honor.  Thank you.

19         THE COURT:  Do you want to go to a magistrate judge

20    and see if you can settle this?

21         MR. COHEN:  No objection, your Honor.

22         MR. CIOLINO:  No objection to that, your Honor.

23         THE COURT:  Okay.  I will do the reference and you

24    will hear from the magistrate judge.

25         Thanks very much.

                              - - -